**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM HENRY MCCORMICK,
　　　　　*Petitioner-Appellant,*

　　　　　　　v.

DARRELL G. ADAMS, Warden,
　　　　　*Respondent-Appellee.*

No. 09-15546

D.C. No.
2:05-cv-00735-
JAM-GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted
January 12, 2010—San Francisco, California

Filed September 3, 2010

Before: Alex Kozinski, Chief Judge, J. Clifford Wallace and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Wallace

13435

## COUNSEL

Eric M. Weaver, Esq., Albany, California, for petitioner-appellant William Henry McCormick.

Mark A. Johnson, Esq., Deputy Attorney General, Sacramento, California, for respondent-appellee Darrell Adams.

## OPINION

WALLACE, Senior Circuit Judge:

McCormick is a prisoner in the custody of the California Department of Corrections. He waived his right to counsel and represented himself at trial. McCormick now contends, however, that his waiver of counsel was not knowing and vol-

untary. The California Court of Appeal, the last state court to render a reasoned decision regarding McCormick's right-to-counsel claim, held that there was no constitutional violation.

After exhausting his state court remedies, McCormick filed the present petition for a writ of habeas corpus in the United States District Court for the Eastern District of California. The district court had jurisdiction over McCormick's habeas petition pursuant to 28 U.S.C. § 2254 and denied relief. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

On December 14, 2001, McCormick was charged in a felony complaint with several counts of child molestation. On the same day that his criminal complaint was filed, McCormick submitted a written waiver of the right to counsel and signed a written advisement of his rights under *Faretta v. California*, 422 U.S. 806 (1975). The written *Faretta* waiver form contained warnings about the dangers of self-representation including, among other things, "[i]t is almost always unwise to represent yourself"; "[i]f you change your mind during the trial, you may not be permitted to postpone the case while you obtain an attorney"; and "[y]our right to represent yourself may be ended, an attorney appointed for you, and you may be excluded from the courtroom if you misbehave during this case or seriously disrupt the trial." On this written form, McCormick indicated that he understood the possible defenses to the charges against him and what would have to be proven before he could be found guilty. He also indicated that he had never been treated for any emotional or mental illness. McCormick explained that he wished to represent himself because, in his own written words, "I do not trust attorney's [sic]."

The state trial court conducted a colloquy regarding McCormick's request to represent himself. The court advised

McCormick that he was entitled to court-appointed counsel. The court inquired regarding McCormick's competency to represent himself. McCormick stated that he had prior experience as a paralegal and that he had represented himself in a previous criminal trial, with some success. The court also asked McCormick if he understood the total exposure he faced if convicted of all charges. McCormick responded that he understood the exposure he faced: the rest of his life in prison. The court granted McCormick's request to represent himself. The court stated: "I'm going to go ahead and we'll see how you do. So you can represent yourself. You understand that at any time you feel the water [i]s over your head, you can ask for an attorney?" McCormick responded in acknowledgment, "[y]es thank you."

On January 10, 2002, McCormick was arraigned, during which the court inquired whether McCormick wished to continue representing himself. He responded that he did. The court replied: "Okay. You understand at any time if you change your mind you let me know." McCormick acknowledged that he understood the court.

During subsequent pretrial hearings, McCormick affirmed his desire to represent himself. At a pretrial motions hearing, McCormick stated to the trial court: "I'm having a little [bit of a] hard time following you, your Honor. I hope you understand that." The court asked McCormick: "Do you understand, Mr. McCormick, [that] I cannot treat you any differently than I would treat any attorney? I can't help you out." McCormick replied that he understood that he was not entitled to special treatment. The court further remarked to McCormick that, "[w]e're running into real problems because you don't know what you are doing." McCormick acknowledged, "[e]vidently, I don't, huh?" After this exchange, and on the prosecutor's suggestion, the court asked McCormick if he wanted to continue representing himself. McCormick affirmed that he did, stating: "Absolutely. I'm looking forward to this trial."

Despite encountering difficulties in preparing his defense, McCormick remained committed to self-representation as the trial date drew near. At another pretrial hearing, the prosecution requested a one- to two-week continuance of the trial date. McCormick strongly opposed any continuance, stating, "I'm ready to go forward. . . . I'm ready to go."

Prior to the commencement of trial, McCormick never sought to revoke his *Faretta* waiver and never requested the appointment of counsel. After the prosecution had rested its case-in-chief at trial, however, McCormick asked for a recess. Outside the presence of the jury, he told the trial court, "I'm having a real bad problem with my, you know, since my surgery I have problems with a memory. I can't remember the questions . . . ." He continued:

> Your Honor, I — at this time I'm way over my head in this thing. I'm having a real bad problem. Is there any chance that — I know Officer Mayberry's going to be gone next week, but can we put this off and maybe I can see if I can find counsel that might help me?

In response to McCormick's statement, the court first inquired about the timing of his surgery, asking: "you had your surgery a few years ago, correct?" McCormick agreed, confirming that his surgery was "[a]bout four years ago." The court pressed further: "[s]o anyone in your position representing himself or herself against these charges would ordinarily be way over their head." McCormick again agreed. The court denied McCormick's request for a continuance, informing him that he was "pretty much stuck with [the] decision" to represent himself.

The trial continued with McCormick representing himself. The jury convicted McCormick of all counts charged. McCormick appealed from his conviction. He is currently serving a

sentence of ten years and eight months, consecutive to a term of 45 years to life in prison.

In his state appeal, McCormick argued (among other things) that his right to counsel had been violated. He said that the trial court did not conduct an adequate inquiry as to whether he understood the consequences of representing himself. He also argued that his waiver of the right to counsel was not voluntary because he had relied on the court's representations, recited above, that he could revisit the decision to represent himself "at any time." Finally, he argued that the trial court wrongly refused his mid-trial request for the appointment of counsel, breaching its promise to permit McCormick to revisit his *Faretta* waiver "at any time."

The court of appeal rejected McCormick's claims. It determined that McCormick voluntarily and knowingly waived his right to counsel and that the trial court had conducted a "more than adequate" colloquy regarding his *Faretta* waiver request. The court concluded McCormick did not waive his right to counsel in reliance on the trial court's promise that he could withdraw the waiver "at any time." Instead, the court concluded, McCormick appeared determined to represent himself in light of his mistrust of attorneys and his representation of himself at a prior trial.

The court also held that McCormick's waiver was not invalidated by any subsequent event. The court observed that McCormick "complains that the trial court reneged on a promise it made twice when it advised him that, if he felt he was 'in over [his] head,' he could request counsel at any time." The court found that McCormick did not rely on these promises. He was set on self-representation; he had "knowingly and enthusiastically exercised his constitutional prerogative to act as his own attorney." The court of appeal rejected the notion that the "promises" at issue could have been reasonably construed as a guarantee that McCormick could summarily withdraw his *Faretta* waiver at *any* stage of the

proceedings. This was especially true in light of the written admonition, which McCormick signed, advising: "If you change your mind during the trial, you may not be permitted to postpone the case while you obtain an attorney."

The court of appeal also rejected McCormick's claim that his supposed mid-trial request for the appointment of counsel was improperly denied, setting forth two independent reasons. First, the request at issue was a request for a continuance and did not actually constitute a request for the appointment of counsel. Insofar as the request for a continuance related to counsel, McCormick's request appeared to be for a continuance so that he could obtain standby counsel. Second, even assuming that McCormick had made a mid-trial request for the appointment of counsel, the request was properly denied, given the trial court's "legitimate skepticism" of his claim of memory problems, his vigorous representation of himself up until that point, the lateness of the request, and the fact that the trial would likely be delayed for some time in order for new counsel to prepare.

After the California Supreme Court denied further review, McCormick petitioned in federal court for a writ of habeas corpus. His habeas petition asserted, among other claims, that his waiver of the right counsel was not knowing and voluntary. The district court denied McCormick's habeas petition. The district court determined that McCormick's *Faretta* waiver was voluntary, reasoning that there was "no significant evidence that petitioner relied on the judge's comments in making his decision to represent himself" or that he "was induced to request self-representation by the judge's assurances that he could change his mind." Instead, the record reflected "that petitioner was determined to represent himself before the proceedings even began," such that "[t]he mere fact that the judge told petitioner he could change his mind about self-representation . . . does not mean that petitioner relied on [that advisement] in making his decision." The district court also concluded that, even assuming that McCormick had

clearly requested the appointment of counsel during trial, that request was properly denied, given the delay that would have resulted at that late stage of the trial.

## II.

We review the district court's denial of McCormick's habeas petition de novo. *See Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004). We may affirm on any ground supported by the record, "even if it differs from the rationale of the district court." *See Ramirez v. Castro*, 365 F.3d 755, 762 (9th Cir. 2004) (internal quotation marks omitted), *citing Alcala v. Woodford*, 334 F.3d 862, 868 (9th Cir. 2003). We review any findings of fact by the district court for clear error. *Riley v. Payne*, 352 F.3d 1313, 1317 (9th Cir. 2003).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a section 2254 habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state's adjudication of that claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, a federal court may issue the writ pursuant to the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal court may issue the writ pursuant to the "unreasonable

application" clause "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

AEDPA establishes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). "[S]tate court findings of fact are presumed correct unless rebutted by clear and convincing evidence or unless based on an unreasonable evidentiary foundation." *Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003), *citing* 28 U.S.C. §§ 2254(d)(2) & 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (stating that such factual determination should be overturned only if "objectively unreasonable").

In applying these standards of review, we "look to the last reasoned state-court decision." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). Here, we review the decision by the court of appeal as the last reasoned decision of the state courts. *Collins v. Runnels*, 603 F.3d 1127, 1130 (9th Cir. 2010).

## III.

**[1]** In *Faretta*, the Supreme Court held that an accused has a Sixth Amendment right to conduct his own defense. 422 U.S. at 819. In order to invoke the right of self-representation successfully, a defendant's waiver of counsel must be "timely, not for the purposes of delay, unequivocal, and knowing and intelligent." *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004); *see also Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989) (waiver must be unequivocal); *United States v. Rylander*, 714 F.2d 996, 1005 (9th Cir. 1983) (waiver must be knowing and intelligent), *cert. denied*, 467 U.S. 1209 (1984). Before allowing a defendant to represent

himself, the "trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Godinez v. Moran*, 509 U.S. 389, 400 (1993).

In this case, McCormick asserts that he did not knowingly and voluntarily waive his right to counsel for two primary reasons. First, McCormick asserts that the trial court led him to believe he could revoke his *Faretta* waiver at any time, and that he relied on this promise in waiving his right to counsel. Second, McCormick contends that he made a mid-trial request for counsel that was wrongly denied by the trial court.

## A.

We begin with McCormick's claim that his waiver of the right to counsel was not knowing and voluntary. *See*, *e.g.*, *Cordova v. Baca*, 346 F.3d 924, 926 (9th Cir. 2003) (observing that "a defective waiver waives nothing and thus is of no consequence"). In assessing this claim, we must first address the contention that the district court and the court of appeal approached this issue incorrectly. McCormick complains that these courts erroneously "[broke] the voluntariness of appellant's *Faretta* waiver into two phases," focusing on his state of mind when first entering his *Faretta* waiver and ignoring the effect of the trial court's promises.

**[2]** The validity of a *Faretta* waiver is typically assessed at the time it is entered. *Erskine*, 355 F.3d at 1169 (the question is "what the defendant understood *at the particular stage of the proceedings at which he purportedly waived his right to counsel*"); *see also United States v. Dujanovic*, 486 F.2d 182, 186 (9th Cir. 1973) (the "keystone determination . . . is whether the request to waive the assistance of competent counsel is competently and intelligently made because with that determination the die is cast"). When determining whether a waiver of the right to counsel was knowing and intelligent, "we must focus on what the defendant understood, rather than on what the court said or understood." *United*

*States v. Balough*, 820 F.2d 1485, 1487-88 (9th Cir. 1987). In this case, McCormick's *Faretta* waiver is accordingly the starting point for our analysis.

## B.

**[3]** We therefore now consider whether McCormick's *Faretta* waiver was knowing and voluntary at the time it was entered in December 2001. In order for a waiver of the right to counsel to be knowing and intelligent, the trial court should apprise a defendant of the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *United States v. Bird*, 621 F.2d 989, 991 (9th Cir. 1980), *quoting Faretta*, 422 U.S. at 835. Accordingly, we have held that "[a] waiver of counsel cannot be knowing and intelligent unless the accused appreciates the possible consequences of mishandling these core functions and the lawyer's superior ability to perform them." *United States v. Kimmel*, 672 F.2d 720, 721 (9th Cir. 1982). This is best accomplished by the trial court conducting a discussion with the defendant, in open court and on the record, of the critical elements and risks of self-representation. *Rylander*, 714 F.2d at 1005. However, we have not "prescribed a meticulous litany to be employed" by a trial court in a colloquy regarding a defendant's request for a *Faretta* waiver. *United States v. Keen*, 104 F.3d 1111, 1114 (9th Cir. 1996). Instead, we require only that a defendant be made aware of three "critical elements" of self-representation: (1) "the nature of the charges against him"; (2) "the possible penalties"; and (3) "the dangers and disadvantages of self-representation." *Id*.; *see also United States v. Farhad*, 190 F.3d 1097, 1099 (9th Cir. 1999).

The court of appeal concluded that McCormick knowingly and voluntarily waived his right to counsel. We review this decision deferentially, *Woodford*, 537 U.S. at 24, presuming that the state court's findings of fact are correct "unless rebutted by clear and convincing evidence or unless based on an

unreasonable evidentiary foundation." *Gonzalez*, 341 F.3d at 903. On habeas review under the AEDPA, we determine whether the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 412-13; *see also Erskine*, 355 F.3d at 1166 (ultimate validity of a *Faretta* waiver involves a mixed question of law and fact).

**[4]** We conclude that there is no basis to disturb the state court's decision. McCormick completed a written *Faretta* waiver request form on the same day that his criminal complaint was filed. The trial court conducted a colloquy regarding McCormick's waiver request. The trial court's colloquy met the requirements of *Faretta* because, according to the court of appeal, "defendant was literate, competent and understanding; nothing in the record suggests that he was mentally retarded or emotionally disturbed." This finding is not clearly erroneous. The trial court questioned McCormick personally and inquired regarding his competency. The trial court likewise inquired whether McCormick was aware of the charges against him and the possible penalties, and McCormick indicated that he was. He was also warned of the dangers and disadvantages of self-representation, in both the written *Faretta* waiver form and at the subsequent colloquy regarding his request. As the court of appeal pointed out, McCormick "repeatedly insisted that he wanted to represent himself despite the advisement that he had the right to a public defender," and despite having been warned of the risks of self-representation. McCormick's request to represent himself was made intelligently.

Nevertheless, McCormick now argues that his waiver was induced by the trial court's statement that he could revisit the decision to represent himself "at any time." The court of appeal rejected this claim, stating: "the judge's comments about revisiting the issue of self-representation did not influence McCormick's decision to waive his right to counsel."

McCormick submitted a written request for *Faretta* waiver prior to his first appearance before a judge; that decision could not have been induced by the trial judge's later statement that he could revisit the issue "at any time." McCormick's allegation was also inconsistent with his clear determination to represent himself. The court of appeal found that "defendant was intent on representing himself because, in his words, 'I do not trust attorneys,' and because he had experienced some success in representing himself in a prior trial." The court of appeal's findings that McCormick knowingly and voluntarily waived his right to counsel, and that this waiver was not induced by the trial court's statements, are not clearly erroneous. The court of appeal's decision is not contrary to, or an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

## C.

Having concluded that McCormick's initial *Faretta* waiver was knowing and voluntary, we consider whether that waiver was nullified by subsequent events. The court of appeal determined that McCormick's *Faretta* waiver remained valid throughout the course of pretrial proceedings. This conclusion was not based on an unreasonable determination of the facts, and it was not contrary to or an unreasonable application of clearly established federal law.

Subsequent to acceptance of McCormick's *Faretta* waiver, the trial court inquired, at certain pretrial hearings, whether he wished to withdraw that waiver. McCormick asserts that his *Faretta* waiver was "subject to an ongoing dialogue" with the court, and that he reentered or renewed his *Faretta* waiver several times during the progress of pretrial proceedings in the underlying criminal case.

**[5]** However, the trial court's inquiries about whether McCormick wished to withdraw his *Faretta* waiver did not

prompt a renewal or reentry of the waiver. Indeed, it is the duty of trial courts to protect an accused's right to counsel, indulging all reasonable inferences against the waiver of counsel. *See Sandoval v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2000); *Brewer v. Williams*, 430 U.S. 387, 404 (1977). In *Farhad*, the district court, like the state trial court here, had inquired whether the defendant wished to continue representing himself. 190 F.3d at 1099. Farhad's repeated insistence of self-representation *confirmed* the validity of his waiver:

> the district judge revisited the issue on several occasions prior to trial, urging Farhad to change his mind. In each instance, Farhad insisted that he would represent himself. Thus, the record in this case conclusively demonstrates that Farhad sufficiently understood his right to counsel and waived that right knowingly, intelligently, and voluntarily.

*Id*. at 1100 (internal quotation marks and alterations omitted). Other cases have similarly recognized that such colloquies confirm the defendant's intent to represent himself. *See*, *e.g.*, *United States v. Van Krieken*, 39 F.3d 227, 229-30 (9th Cir. 1994).

McCormick's renewal and reentry contention is also untenable as a logical matter. If McCormick's waiver was subject to renewal at multiple pretrial hearings, the trial court would be required to determine that his waiver was knowing and voluntary at each relevant appearance. *See Godinez*, 509 U.S. at 400 (trial courts must be satisfied that waiver is knowing and voluntary). But this is not the law: the validity of a waiver is typically assessed at the time of entry. McCormick entered a valid waiver of his right to counsel. The right to counsel, once validly waived, was "no longer absolute." *Menefield v. Borg*, 881 F.2d 696, 700 (9th Cir. 1989). McCormick was not returned to the position of a defendant entering an initial *Faretta* waiver every time the trial court inquired if he would like to withdraw it. Recognizing the trial court's duty to pro-

tect defendants' rights to counsel, we conclude that the trial court did not go astray by inquiring whether McCormick wished to withdraw his *Faretta* waiver.

This conclusion is not changed by the trial court's pretrial statements that McCormick could revisit his decision to represent himself at any time. McCormick has not shown that he detrimentally relied on the trial court's statement at his arraignment or during any other statement. As we have already described, McCormick was set on self-representation. Indeed, subsequent to entering his *Faretta* waiver and subsequent to his arraignment, McCormick appeared at several pretrial hearings. McCormick did not explicitly revoke the waiver at any time prior to trial. He never made any statement that would call into question his desire to represent himself. To the contrary, McCormick confirmed that he was committed to representing himself. McCormick does not point to any evidence establishing that the trial court's statements were material to his waiver decision in any way.

**[6]** The court of appeal concluded that the validity of McCormick's waiver was not affected by the trial court's statements that he could ask to withdraw that waiver at any time. Even assuming that those statements constituted some form of error, we have stated that the effect of a defective waiver *colloquy* presents a distinct issue from the effect of a defective *waiver* itself; a defective waiver colloquy "will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver." *Balough*, 820 F.2d at 1488; *see also United States v. Harris*, 683 F.2d 322, 324 (9th Cir. 1982); *Kimmel*, 672 F.2d at 722; *United States v. Aponte*, 591 F.2d 1247, 1249-50 (9th Cir. 1978). We look to "the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused" to determine whether the waiver was knowing and intelligent despite the absence of a specific inquiry on the record. *Kimmel*, 672 F.2d at 722, *quoting Cooley v. United States*, 501 F.2d 1249, 1252 (9th Cir. 1974), *cert. denied*, 419

U.S. 1123 (1975). The Supreme Court "has not told us whether a trial court's failure to give proper [*Faretta*] warnings automatically vitiates the waiver." *Cordova*, 346 F.3d at 926. In light of this silence from the Court, we have held that "a state court would be entitled to conclude that a defective waiver colloquy does not automatically result in a defective waiver — that a defendant's waiver was nonetheless knowing and voluntary." *Id.*; *see also Balough*, 820 F.2d at 1488. The court of appeal's conclusion was therefore neither inconsistent with, nor an unreasonable application of, federal law.

## IV.

Satisfied that McCormick's *Faretta* waiver was knowing and voluntary and remained so until trial, we turn to the second set of issues presented in this appeal: whether McCormick invoked his right to counsel during trial and whether the trial court erred in denying McCormick's request. The court of appeal made two determinations relevant to these issues. First, it found that McCormick did not make a request for counsel or ask to be relieved of his *Faretta* waiver during trial. If McCormick "did not ask the court to appoint an attorney to represent him," the trial court could not have erred by failing to do so. Second, the court of appeal concluded that, even assuming McCormick made an unambiguous request for the appointment of counsel, the request would have been properly denied. For its part, the federal district court relied on only the second portion of the court of appeal's reasoning in rejecting McCormick's claim.

**[7]** The trial court denied McCormick's request for a continuance because, among other things, it was made in the middle of trial and would cause delay. The court of appeal found that "[a]ppointment of counsel at that late stage would almost certainly have required a prolonged postponement of the trial, severely disrupting the proceedings," and determined that McCormick's request for a delay was suspect for several additional reasons:

the trial court harbored legitimate skepticism about defendant's sudden claim of memory problems because of surgery he underwent four years before. Defendant had vigorously represented himself up until then, which included several motions to dismiss for violation of his speedy trial rights and motions to suppress evidence. The request was untimely, coming only after the prosecution had finished presenting its case and defendant was putting on his.

Taking all of the above into account, the court of appeal concluded that the trial court did not abuse its discretion in denying McCormick's request for a continuance and/or counsel, reasoning that "[a] defendant who suddenly eschews self-representation may find that he will not be relieved of his original choice. A trial judge is not obligated to restore counsel if a *Faretta* defendant changes his mind in midtrial and no longer wants to represent himself," *quoting Brookner v. Superior Ct.*, 64 Cal. App. 4th 1390, 1394 (1998).

We hold that the court of appeal's decision was not an unreasonable determination of the facts presented to it, nor was it contrary to, or an unreasonable application of, clearly-established federal law. The Supreme Court has held that "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), *citing Avery v. Alabama*, 308 U.S. 444 (1940). The Court has cautioned that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality," but that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.*; *see also Morris v. Slappy*, 461 U.S. 1,

11-12 (1983) (trial courts have broad discretion with regard to continuances, and "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel") (internal quotation marks omitted).

**[8]** In line with that precedent, we have recognized that "[t]here are times when the criminal justice system would be poorly served by allowing the defendant to reverse his course at the last minute and insist upon representation by counsel." *Menefield*, 881 F.2d at 700. A continuance may be denied even where it results in the defendant being unrepresented at trial. *United States v. Thompson*, 587 F.3d 1165, 1174 (9th Cir. 2009) (listing factors to be balanced when a decision to grant or deny a continuance implicates a defendant's Sixth Amendment right to counsel, including "whether the continuance would inconvenience witnesses, the court, counsel, or the parties; [ ] whether other continuances have been granted; [ ] whether legitimate reasons exist for the delay; [ ] whether the delay is the defendant's fault; and [ ] whether a denial would prejudice the defendant"), *citing United States v. Studley*, 783 F.2d 934, 938 (9th Cir. 1986) and *United States v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir. 1979); *see also Faretta*, 422 U.S. at 852 (Blackmun, J., dissenting) (pointing out the procedural dilemmas raised by the self-representation rule).

**[9]** The court of appeal reasonably concluded, therefore, that the trial court did not abuse its discretion in denying the requested continuance. *Cf. Marshall v. Taylor*, 395 F.3d 1058, 1061-62 (9th Cir. 2005) (regarding timeliness element in *Faretta* request).

**AFFIRMED.**