**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CURTIS M. JOHN-CHARLES,
   *Petitioner-Appellant,*

    v.

STATE OF CALIFORNIA,
   *Respondent-Appellee.*

No. 09-16530

D.C. No.
2:05-cv-00175-
MCE-GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
November 3, 2010—Stanford, California

Filed July 22, 2011

Before: Sidney R. Thomas and Sandra S. Ikuta,
Circuit Judges, and Jane A. Restani, Judge.*

Opinion by Judge Ikuta

*The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

**COUNSEL**

Mark Eibert, Esq., Half Moon Bay, California, for the petitioner.

Barton Bowers, Deputy Attorney General, State of California, Sacramento, California, for the respondent.

**OPINION**

IKUTA, Circuit Judge:

Curtis M. John-Charles appeals the district court's denial of his federal habeas petition. He raises two claims on appeal. First, John-Charles challenges the California Court of Appeal's rulings that he had no absolute Sixth Amendment right to the reappointment of counsel after waiving his right to counsel under *Faretta v. California*, 422 U.S. 806, 807 (1975), and that the trial court's abuse of discretion in failing to reappoint counsel was harmless beyond a reasonable doubt. Second, John-Charles claims that the California court violated his rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), when it used a prior juvenile conviction as a "strike" to enhance his sentence. Because neither of these decisions "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," we affirm the district court's

denial of John-Charles's habeas petition. 28 U.S.C. § 2254(d)(1).

I

In 2001, the State of California charged John-Charles with robbery, receipt of stolen property, assault with a firearm, acting in concert (with co-defendant Richard Ward) and entering an inhabited structure, personal use of a firearm in the commission of a robbery, and being a felon in possession of a firearm. The charges stemmed from a home-invasion robbery allegedly committed by John-Charles, Ward, and two or three other men, against several individuals living in a duplex in Sacramento county.

John-Charles was dissatisfied with his defense attorney during the pretrial stages of his case and accordingly made three unsuccessful motions to substitute different counsel.[1] At a hearing on November 2, 2001, the trial court once again denied John-Charles's motion to substitute different counsel. John-Charles sought to exercise his rights under *Faretta v. California*, which established the constitutional "right to proceed without counsel when [a defendant] voluntarily and intelligently elects to do so." 422 U.S. at 807. The trial court granted John-Charles's request to represent himself after a colloquy in which the trial court ensured his counsel waiver was knowing and intelligent. At the hearing, the trial court acknowledged that under California's speedy trial act, Cal. Penal Code § 1382, John-Charles was entitled to have his trial commence on November 5, 2001, but determined there was good cause to extend the speedy trial deadline to November 27, 2001; the court subsequently extended the deadline to December 26, 2001, and then to January 3, 2002.

---

[1]These motions are dubbed "*Marsden* motions" in California courts, a name which derives from *People v. Marsden*, 465 P.2d 44 (Cal. 1970), which set forth the governing state-law framework for considering a defendant's request to substitute counsel.

On January 3, 2002, the date set for voir dire and the commencement of trial, John-Charles asked the court to reappoint trial counsel, because he was bewildered by the jury selection process and motions arguments. The court denied his request because John-Charles had waited to raise it "until the last minute," the court did not want to continue the case while John-Charles attempted to find counsel, and the court deemed it impossible for John-Charles to find an attorney who would step in to represent him on such short notice. The court likewise declined to grant John-Charles's request to appoint an attorney to help him with jury selection. Because John-Charles was still dressed in prison garb, the court decided to delay jury selection until John-Charles was dressed appropriately. In light of the speedy trial issue, however, the court ruled that because it had already devoted substantial time and resources to the matter (it had spent the entire day addressing the parties' motions), and both the court and litigants were ready to proceed, the trial of John-Charles and Ward "ha[d] commenced" as of January 3, 2002.

The prosecution filed an amended information on January 4, 2002, adding Count 5 (assault with a firearm), and the trial was continued to January 8, 2002. On January 8, the prosecution filed a second amended information, charging John-Charles with a prior "strike" stemming from a juvenile conviction. On the same day, John-Charles again moved for the appointment of counsel and a continuance. The court again denied his motion. Jury selection commenced later that day. The following day, January 9, 2002, John-Charles made another request for appointment of counsel, which he styled as a *Marsden* motion, saying, "I want to fire myself," and explaining that he could not adequately represent himself and intended to seek a continuance. The court again denied his request for counsel and a continuance, explaining:

> We are in the process of picking a jury for this [joint] trial[;] [i]t would, in my opinion be extremely disruptive, to — and not in the best interests of the

>administration of justice, certainly, to in effect grant a severance of these trials with you and [your co-defendant] Ward and that's in effect, what would happen.

John-Charles thereafter continued to represent himself throughout the guilt phase of his trial and was convicted on all charges (as was his represented co-defendant, Ward). At the penalty phase, the trial court found that John-Charles had a juvenile adjudication of guilt for an offense that qualified as a strike under California's three-strikes law. The court accordingly sentenced John-Charles as a second-strike offender.

On direct appeal, John-Charles argued that the trial court's refusal to permit him to withdraw his *Faretta* waiver violated his Sixth Amendment right to counsel, and that the trial court's use of his prior juvenile adjudication to enhance his sentence violated his Fourteenth Amendment due process rights.

The California Court of Appeal denied his claims. As the court explained, under California Supreme Court precedent, a self-represented defendant who seeks to withdraw his *Faretta* waiver after commencement of trial does not have an absolute right to reinstatement of counsel. *See People v. Gallego*, 52 Cal. 3d 115, 163-64 (1990); *see also People v. Lawley*, 27 Cal. 4th 102, 148-49 (2002). Rather, the trial court must exercise its discretion based on a range of factors set forth in *People v. Windham*, 19 Cal. 3d 121 (1977). Reviewing the trial court's denial of John-Charles's reappointment request under this standard, the California Court of Appeal held that the trial court abused its discretion, because there was no evidence that "the reappointment of counsel would have caused a significant delay or disruption of the trial proceedings." The court then evaluated the effect of this error. It first noted that it was not clear under California law whether such errors should be reviewed for harmlessness beyond a reasonable doubt under the standard set forth in *Chapman v. California,* 386 U.S. 18

(1967), or under a less onerous state standard, *see People v. Watson*, 46 Cal. 2d 818, 836 (1956) (holding that certain trial errors are harmless unless there is a reasonable probability that a different result would have occurred absent the error). The court did not resolve this issue, because it concluded that even assuming the *Chapman* standard applied, the trial court's error was harmless beyond a reasonable doubt, given the overwhelming weight of the evidence against John-Charles on the robbery, felon-in-possession, and receipt-of-stolen-property counts,[2] and because John-Charles's co-defendant, who was represented by counsel, was convicted on the same charges, in the same trial, before the same jury. The California Supreme Court denied review.

John-Charles petitioned for habeas relief in federal court. After the district court denied John-Charles's habeas petition, he timely filed a notice of appeal.

## II

We review John-Charles's claims through the lens of AEDPA's extremely deferential standard of review. "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).[3]

---

[2]The California Court of Appeal held that the court's failure to appoint counsel was not harmless with respect to the personal use of a firearm count. The court therefore vacated the firearm-use conviction and remanded it for retrial. Accordingly, this issue is not before us.

[3]Section 2254(d) states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

Under § 2254(d)(1), "[f]ederal habeas relief may not be granted . . . unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of th[e Supreme] Court, or that it 'involved an unreasonable application of' such law."**[4]** *Id.* at 785 (citations omitted).

For purposes of § 2254(d)(1), "a state court decision is contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular [petitioner's] case." *Williams*, 529 U.S. at 407. The state's application of the Supreme Court precedent "must be shown to be not only erroneous, but *objectively* unreasonable." *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009) (emphasis added) (quoting *Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam)) (internal quotation marks omitted).

---

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**[4]**While we are also relieved from AEDPA deference with respect to a state court decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2), John-Charles has failed to develop any argument on this front, and thus has waived it. *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996); *see* Fed. R. App. P. 28(a)(9)(A).

In *Harrington*, the Supreme Court stressed the deferential nature of the § 2254(d)(1) standard: "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Moreover, the more general the rule being considered, "the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (quoting *Yarborough*, 541 U.S. at 664) (internal quotation marks omitted); *see also Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

Finally, for purposes of § 2254(d)(1), the Supreme Court precedent at issue must be "clearly established." The phrase "clearly established" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer*, 538 U.S. at 71 (quoting *Williams*, 529 U.S. at 412) (internal quotation marks omitted). In two recent cases, the Supreme Court indicated that a state court's decision is not contrary to or an unreasonable application of clearly established Supreme Court precedent unless that precedent is closely on point. *See Wright v. Van Patten*, 552 U.S. 120, 125 (2008) (holding that the state court's decision was not an unreasonable application of Supreme Court precedent where no Supreme Court decision "squarely addresses the issue" in the case or gives a "clear answer to the question presented"); *Carey v. Musladin*, 549 U.S. 70, 77 (2006). In deriving a rule from these decisions, we explained that "[t]he common thread in all these cases is that when there is a principled reason for the state court to distinguish between the case before it and Supreme Court precedent, the state court's decision will not be an unreasonable application of clearly established Supreme Court law." *Murdoch v. Castro*, 609 F.3d 983, 992 (9th Cir. 2010) (en banc).

## III

Mindful of these principles, we turn to John-Charles's challenge to the state court's ruling on his Sixth Amendment

claim, specifically, that John-Charles was erroneously forced to go to trial without an attorney, that his Sixth Amendment rights were thereby violated, and that such a violation is a structural error requiring reversal.

A

**[1]** Supreme Court decisions have long established the principle that the Sixth Amendment guarantees an indigent criminal defendant the appointment of counsel for his defense at all critical stages of his prosecution, *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963), and that a governmental violation of this right is "structural error" that demands automatic reversal of the defendant's underlying conviction, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006). On the other hand, the Supreme Court has also recognized that a defendant has the reciprocal constitutional right to "proceed without counsel when he voluntarily and intelligently elects to do so," *Faretta*, 422 U.S. at 807, and has acknowledged the tension between these two reciprocal rights, *see id.* at 832-35; *see also United States v. Gerritsen*, 571 F.3d 1001, 1007 (9th Cir. 2009) (noting that "[a] defendant therefore has two correlative and mutually exclusive Sixth Amendment rights: the right to have counsel, on one hand, and the right to refuse counsel and represent himself, on the other"). Once a defendant has exercised the Sixth Amendment right to proceed pro se, the defendant necessarily foregoes the reciprocal Sixth Amendment "right to counsel at all 'critical stages' of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 87 (2004). Under AEDPA, the question for us is whether *Faretta* or any other decision constitutes clearly established Supreme Court precedent governing a self-represented defendant's request for reappointment of counsel after the defendant has made a valid *Faretta* waiver of the right to counsel established in *Gideon*.

**[2]** A review of the majority and dissenting opinions in *Faretta* makes clear that the Court did not directly address whether and under what conditions a defendant who validly

waives his right to counsel has a Sixth Amendment right to reassert it later in the same stage of his criminal trial. The majority in *Faretta* did not discuss the question at all, and the dissent expressly flagged the matter as one unaddressed by the majority, stating that the Court's decision "leaves open a host" of questions, including whether a defendant who has made an election to proceed by counsel or pro se must "be allowed to switch in midtrial." *Faretta*, 422 U.S. at 852 (Blackmun, J., dissenting). Since *Faretta*, the Court has remained silent on this question. Therefore, no "specific legal rule" on this issue has been "squarely established by th[e] Court," *Harrington*, 131 S. Ct. at 786 (quoting *Knowles*, 129 S. Ct. at 1413-14) (internal quotation marks omitted); *cf. Murdoch*, 609 F.3d at 994 (quoting *Earp v. Ornoski*, 432 F.3d 1158, 1185 (9th Cir. 2005)) (holding that a constitutional principle is not clearly established where the Supreme Court has expressly concluded that the issue is an "open question"), and *Faretta* thus is not "clearly established" Supreme Court precedent for purposes of John-Charles's claim that he is constitutionally entitled to the reappointment of counsel.

Notwithstanding the Supreme Court's silence on the specific issue at hand, we must also consider whether a state court's denial of a request for reappointment of counsel after a *Faretta* waiver constitutes an unreasonable application of the general principles enunciated in *Gideon* and *Faretta*. The Supreme Court has held that even a general standard "may be applied in an unreasonable manner"; a state court does so when no "reasonable interpretation of the controlling [Supreme Court] standard" can "support [the state court's] legal ruling." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). In conducting this inquiry, however, we are mindful that the more general the rule being considered, "the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough*, 541 U.S. at 664) (internal quotation marks omitted).

**[3]** As noted above, the California Court of Appeal here reasoned that although John-Charles initially had an absolute

Sixth Amendment right to counsel per *Gideon*, he did not have an absolute, constitutional right to the reinstatement of counsel after his *Faretta* waiver. In the course of explaining its decision, the Court of Appeal noted that "it is not the court which deprived [John-Charles] of the assistance of counsel but [rather his] own considered decision to exercise his constitutional right under *Faretta* to represent himself at trial." There are several reasons why the conclusion that there is no absolute right to reinstatement of counsel after a *Faretta* waiver is within "the range of reasonable applications" of *Gideon* and *Faretta*. *Harrington*, 131 S. Ct. at 788. First, as we have already said, no Supreme Court case provides any tailored guidance on what a court should do in such a situation, and thus a state court could reasonably conclude that a defendant has no absolute right to reverse course once the defendant has knowingly and voluntarily waived the right to counsel. Indeed, the solemn procedural protections required by *Faretta* for a defendant seeking to make such a waiver suggest the gravity of the defendant's election. *See Faretta*, 422 U.S. at 835 (declaring that defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open' " (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

More important, it is apparent that a "fairminded" jurist could agree with the state court's conclusion that *Gideon* and *Faretta* do not require reappointment of counsel after an initial waiver of the right, *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough*, 541 U.S. at 664) (internal quotation marks omitted), because our own cases have reached the same conclusion on this issue. *See, e.g.*, *Menefield v. Borg*, 881 F.2d 696, 700 (9th Cir. 1989) (recognizing that "the right to counsel—once waived—is no longer absolute"); *see also Robinson v. Ignacio*, 360 F.3d 1044, 1056 (9th Cir. 2004) (noting that "the Supreme Court has made it clear that once a defendant has made such a waiver, he must bear the consequences without

complaint though he conducted his own defense to his own detriment"). We recently applied this principle in a case similar to John-Charles's. *See McCormick v. Adams*, 621 F.3d 970, 980 (9th Cir. 2010). In *McCormick*, a defendant who waived his right to counsel changed his mind halfway through trial, and asked for a continuance to locate counsel who could help him. *Id.* at 973. The trial court denied the defendant's request, and he was convicted. *Id.* at 973-74. On appeal, the state appellate court held that "even assuming that McCormick had made a mid-trial request for the appointment of counsel," the trial court had not abused its discretion in refusing the request. *Id.* at 974. In denying McCormick's habeas petition, we held that the state court's decision was not "contrary to, or an unreasonable application of, clearly-established federal law," *id.* at 980, and relied on Supreme Court decisions holding that trial courts have broad discretion to deny a request for a continuance even if the defendant "is compelled to defend without counsel," *id.* (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)) (internal quotation marks omitted). We also noted our earlier conclusion that "[t]here are times when the criminal justice system would be poorly served by allowing the defendant to reverse his course at the last minute and insist upon representation by counsel." *Id.* (alteration in original) (quoting *Menefield*, 881 F.2d at 700).

**[4]** Furthermore, our conclusion that the Sixth Amendment right to counsel is not absolute once it has been waived is consistent with the decisions of four other circuits. *See United States v. Leveto*, 540 F.3d 200, 207 (3d Cir. 2008); *United States v. Merchant*, 992 F.2d 1091, 1095 (10th Cir. 1993); *United States v. West*, 877 F.2d 281, 286 (4th Cir. 1989); *United States v. Solina*, 733 F.2d 1208, 1211-12 (7th Cir. 1984).

**[5]** Given our rulings in *Menefield* and *McCormick*, and the similar holdings of four other Courts of Appeals, it is clear that "fairminded jurists" could conclude that there is no absolute, constitutional right to reappointment of counsel after a

*Faretta* waiver. Moreover, a state court could make a princi-
pled distinction between *Gideon*'s general standard and the
factual scenario here, where a defendant has waived the right
to counsel established by *Gideon. See Murdoch*, 609 F.3d at
994. Accordingly, we must reject John-Charles's argument
that the California Court of Appeal's conclusion was contrary
to or an unreasonable application of Supreme Court prece-
dent.

B

John-Charles presses the further point that he is entitled to
habeas relief because the California Court of Appeal held that
the trial court's refusal to reappoint counsel was an abuse of
discretion, and any such error in reappointing counsel is per
se a structural error.

We disagree; in fact, John-Charles's position lacks even a
toehold in clearly established Supreme Court precedent. As
discussed above, no Supreme Court authority holds that a
defendant has a constitutional right to post-*Faretta* reappoint-
ment of counsel once trial proceedings have commenced.
Given this landscape, bounded only by the requirement to rea-
sonably apply the general principles of *Gideon* and *Faretta*,
state courts could reasonably decide to vest the reappointment
decision in the trial judge's discretion, prescribe a test for
guiding that discretion, and establish a framework for review-
ing errors in trial courts' application of that framework in par-
ticular cases. A state court's decision to do any or all of these
things would not be contrary to, or an unreasonable applica-
tion of, clearly established Supreme Court precedent.

**[6]** In short, the Supreme Court has not clearly articulated
a constitutional right to post-*Faretta* reappointment of counsel
during trial. It has not defined the standard of review that
should apply to trial courts' handling of such issues. And it
has not spoken on whether a trial court's error in ruling on a
reappointment request is structural or trial error. This silence

compels us to defer to the state court's reasonable attempts to fill the void. Even if we would have interpreted Sixth Amendment requirements differently than the California courts, we cannot say the state court's analysis is objectively unreasonable. *See Harrington*, 131 S. Ct. at 785. Accordingly, we conclude that the California Court of Appeal's decision here (i.e., that the trial court's error was harmless beyond a reasonable doubt) is not contrary to or an unreasonable application of clearly established Supreme Court precedent.

John-Charles's reliance on Ninth Circuit precedent, specifically *Menefield* and *Robinson*, is unavailing. In *Menefield*, we held that a state trial court erred in refusing to reappoint counsel for a self-represented defendant who made a post-trial request for assistance of counsel, and suggested (without holding) that the erroneous denial of the right to counsel at a post-trial hearing required automatic reversal. *See* 881 F.2d at 701 n.7 (noting that the parties did not dispute that when a Sixth Amendment violation pervades a post-conviction hearing, that post-conviction decision must be automatically reversed.). Because *Menefield* was a pre-AEDPA case, we analyzed the petitioner's claim de novo, and did not address the question whether there is clearly established Supreme Court precedent detailing the Sixth Amendment rights of a defendant who seeks to withdraw an earlier, valid *Faretta* waiver. Given the material differences in its factual and procedural posture, *Menefield* cannot control our AEDPA analysis.

In *Robinson*, a post-AEDPA decision, we concluded that for purposes of habeas review, "clearly established Federal law" holds that a defendant has a Sixth Amendment right to counsel for purposes of a sentencing proceeding, even if the defendant validly waived his right to counsel at the trial stage of his criminal prosecution, 360 F.3d at 1059, and that a violation of that right was structural error, such that re-sentencing was required, *id.* at 1061. In reaching this conclusion, we relied on our own precedent, as well as that of four other cir-

cuits, even though the Supreme Court itself had not (and still has not) ever spoken to the issue. *Id.* at 1058-59. Even if this mode of AEDPA analysis could survive after *Musladin, Van Patten*, and our own en banc decision in *Murdoch*, *Robinson* is not on point. *Robinson* expressly limited its holding to the situation where a *Faretta* defendant seeks to reassert a right to counsel for a separate, subsequent sentencing proceeding. *Id.* at 1059 (holding that it is "clearly established Federal law" that "a defendant who has waived his right to counsel may nonetheless re-assert that right for the purposes of a sentencing proceeding"). Because *Robinson* did not purport to address the question whether a self-represented defendant has a right to reappointment of counsel once trial proceedings have begun, rather than during a subsequent proceeding, *see id.* at 1058 ("[There is] a substantial practical distinction between delay on the eve of trial and delay at the time of a post-trial hearing." (quoting *Menefield*, 881 F.2d at 700-01)), the case does not represent clearly established Supreme Court precedent governing the "novel factual context" at issue here, *Van Patten*, 552 U.S. at 125.

**[7]** For the reasons outlined above, we conclude that the California Court of Appeal's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and we therefore affirm the district court's denial of John-Charles's Sixth Amendment claim. § 2254(d)(1).

IV

John-Charles also claims that the California Court of Appeal violated clearly established Federal law when it relied on his prior juvenile conviction to enhance his sentence beyond the statutory maximum. He claims that the state court's opinion is an unreasonable application of *Apprendi* and *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001). *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the pre-

scribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 243-44 (1998) (holding that the fact of a prior conviction need not be proved to a jury beyond a reasonable doubt in order to be used as a sentence-enhancing factor). Interpreting *Apprendi*, *Tighe* concluded that, if a prior juvenile conviction did not afford the defendant the right to a trial by jury, the fact of that juvenile conviction must be proved to a jury beyond a reasonable doubt if it is to be used to enhance a defendant's sentence beyond the statutory maximum. 266 F.3d at 1194-95. It based this conclusion on the belief that *Apprendi*'s prior-conviction exception was "limited to prior convictions resulting from proceedings that afforded the procedural necessities of a jury trial and proof beyond a reasonable doubt." *Id.* at 1194.

The California Court of Appeal rejected *Tighe* and concluded that the trial court's use of John-Charles's juvenile conviction was constitutionally sound under *Apprendi* because John-Charles received all of the process due him in that juvenile proceeding (as opposed to in an adult criminal trial), including "rights to notice, counsel, confrontation and cross-examination and against self-incrimination," as well as the requirement of proof beyond a reasonable doubt.

**[8]** We have already determined that our holding in *Tighe* is not clearly established Federal law for AEDPA purposes. *See Boyd v. Newland*, 467 F.3d 1139, 1152 (9th Cir. 2006). *Boyd* noted that *Tighe* had been rejected not only by the California courts, but also by the Third, Eighth, and Eleventh Circuits. *See id.* We concluded that, "in the face of authority that is directly contrary to *Tighe*, and in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent. *Id.*

**[9]** As John-Charles himself acknowledges, we are bound by *Boyd*, and we therefore conclude that the California court neither contravened nor unreasonably applied clearly established Supreme Court precedent when it upheld the trial court's use of John-Charles's juvenile conviction as a strike that extended his term of imprisonment. § 2254(d)(1); *Boyd*, 467 F.3d at 1152.

V

The Supreme Court has warned us to avoid applying AEDPA in a manner that displays "a lack of deference to the state court's determination and an improper intervention in state criminal processes." *Harrington*, 131 S. Ct. at 787. Instead, we must consider "arguments that would otherwise justify the state court's result." *Id.* As the Court noted, although "§ 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," it goes no further than is essential to "preserve[ ] authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents." *Id.* Because we cannot say that all fairminded jurists would be compelled to hold that the California Court of Appeal's determinations were contrary to or an unreasonable application of clearly established Supreme Court precedent, we must deny John-Charles's request for relief.

**AFFIRMED.**