**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OTIS LEE RODGERS,
            *Petitioner-Appellant,*

v.

JOHN MARSHALL, WARDEN,
            *Respondent-Appellee.*

No. 10-55816

D.C. No.
5:08-cv-01003-
VAP-MLG

OPINION

On Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
January 12, 2012—Pasadena, California

Filed May 17, 2012

Before: Stephen Reinhardt and William A. Fletcher,
Circuit Judges, and Jack Zouhary, District Judge.*

Opinion by Judge Zouhary

---

*The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

## COUNSEL

John Ward (argued), San Francisco, California, for petitioner-appellant Otis Lee Rodgers.

Kevin Vienna (argued), Kamala D. Harris, Gary W. Schons, David Delgado-Rucci, San Diego, California, for respondent-appellee John Marshall.

## OPINION

ZOUHARY, District Judge:

### INTRODUCTION

In June 2003, a jury found Petitioner-Appellant Otis Lee Rodgers ("Rodgers") guilty of assault with a firearm, possession of a firearm and ammunition by a felon, and making criminal threats, as well as two sentencing enhancement allegations. Rodgers was sentenced and is currently serving a sixteen-year prison term.

After exhausting state court remedies, Rodgers filed a petition for a writ of habeas corpus in federal court, raising twenty-one claims for relief. The district court denied the petition, but granted Rodgers a limited certificate of appealability regarding his claim that the state trial court violated his Sixth Amendment right to counsel by denying his timely request for representation to file a new trial motion. In addition to the certified issue, Rodgers argues there was insufficient evidence to support the charge of criminal threats, and the state court unreasonably affirmed an upper term sentence in the absence of proof to a jury beyond a reasonable doubt. We decline to address those uncertified issues.

This case requires us to consider whether a criminal defendant's request for legal counsel to file a post-verdict motion

for a new trial is a "critical stage," and whether denying such a request, because the defendant previously waived his right to trial counsel, is a violation of clearly established federal law. For the reasons set forth below, the judgment of the district court is **REVERSED**, and this case is **REMANDED** for further proceedings.

## BACKGROUND

### Procedural Background

In June 2003, a jury found Rodgers guilty of several state charges. The jury also found two sentencing enhancements, and Rodgers was sentenced to sixteen years in prison. Rodgers appealed the judgment to the California appellate court which affirmed his convictions and sentence in August 2005.

Rodgers filed a petition for review with the California Supreme Court, but his petition was dismissed in July 2007. While Rodgers' petition for review was pending, he filed habeas petitions with the California appellate court and the California Supreme Court challenging the search of his vehicle. Although Rodgers was represented by appellate counsel, he also filed numerous *pro per* motions, post-conviction pleadings, and writ applications in the California appellate court and the California Supreme Court, including several motions for substitution of appellate counsel. The appellate courts rejected all those petitions and claims.

In July 2008, Rodgers filed a petition for writ of habeas corpus in federal court raising twenty-one claims for relief, including denial of right to counsel at the post-trial stages for new trial motions and sentencing. The California Attorney General answered the Petition in April 2009, arguing the state court rejected Rodgers' claim on the merits, and the court's decision was neither contrary to, nor an unreasonable application of, controlling United States Supreme Court precedent.

The petition was referred to the magistrate judge in March 2010, who recommended dismissal. Rodgers filed objections and, in May 2010, the district judge approved the magistrate's recommendation and also granted a certificate of appealability as to only one claim — whether the trial court violated Rodgers' Sixth Amendment by denying his request for the appointment of counsel to file a new trial motion. For all other claims, the district court found Rodgers could not "make a colorable claim that jurists of reason would find debatable or wrong." Rodgers filed this timely appeal.

**Factual Background**

Early in the morning on July 15, 2001, a woman was awakened by screaming and yelling from the parking lot of a nearby apartment complex. The woman looked through her window and saw an African American man and a woman near a red car in the parking lot. Events later established the man was Otis Lee Rodgers and the woman, his wife Joyce Rodgers. Rodgers, who was calling Joyce a prostitute and threatening to kill her, hit her in the head with his fist and told her to "[g]ive me the fucking gun." Joyce retrieved a gun from the car and gave it to Rodgers, who then placed the gun to her head and said he was going to kill her. Joyce was crying. These events were also witnessed by the woman's eleven-year old daughter.

The woman made an anonymous 911 call and, while talking to the dispatcher, saw a patrol car pass by the parking lot. She informed the dispatcher that the patrol car needed to turn around. The Riverside County deputy sheriff who was driving the patrol car had previously received a radio dispatch that a man and woman were in a red sedan in the apartment complex parking lot, and that the man threatened to shoot the woman. Rodgers was leaving the parking lot in the red sedan as the deputy approached. Joyce was in the passenger seat — upset and crying. Rodgers told the deputy that he and Joyce had been arguing over financial problems. After discovering

Rodgers did not have a driver's license, the deputy placed him in the back of the patrol car. Joyce told the deputy that Rodgers had not threatened or assaulted her.

A second deputy sheriff who arrived at the scene as backup observed several fresh gouge wounds on Joyce's shoulders. Joyce told the deputy she and Rodgers had been arguing and that she scraped her shoulders on a nail that was sticking out of a wall. With Joyce's consent, the first deputy searched Rodgers' car. The deputy found a .357 magnum revolver and ammunition inside the trunk. Rodgers was arrested and charged with several violations of the California Penal Code.

During the pretrial phase of his case, which lasted nearly two years, Rodgers alternated requests for counsel and self-representation. Between July and December 2001, Rodgers represented himself for arraignment and at hearings on motions prepared *pro per*. Rodgers retained counsel for a January 2002 preliminary hearing; however, in March 2002, the trial court granted his motion for self-representation. In May 2002, upon Rodgers' request, the trial court appointed a public defender. Four months later, Rodgers again decided to go it alone, but the trial court denied his motion to proceed *pro per*. In November 2002, the trial court relieved the public defender due to a conflict of interest and appointed a defense panel attorney to continue Rodgers' representation. Rodgers sought and received permission to represent himself in February 2003, and continued to represent himself throughout trial.

At trial, Rodgers called several witnesses and testified on his own behalf. Rodgers testified that on the night of the incident, he and Joyce went to a club and then drove to a parking lot near a friend's home. Other cars, including a red car, were also in the parking lot, along with other African American males and females. Rodgers and Joyce waited in their car for their friend to return from the club. About thirty to forty-five minutes later, Rodgers noticed police cars "zooming around." As Rodgers was leaving the parking lot, a deputy pulled up.

After asking Rodgers some questions about his driver's license, the deputy placed Rodgers in the back of the patrol car. According to Rodgers, the deputy then took a plastic bag containing a dark object out of the patrol car, went to Rodgers' car, opened the trunk, and returned with the bag that had previously been in the patrol car.

In June 2003, a jury found Rodgers guilty of assault with a firearm, possession of a firearm and ammunition by a felon, and making criminal threats. The jury also found Rodgers personally used a firearm while committing the assault and making the criminal threats and that Rodgers was on bail pending trial for another felony offense when he committed these crimes. In addition, Rodgers admitted he had two prior felony convictions, had been sentenced to prison on each of them, and that within five years of release from custody he committed another felony.

Immediately following the reading of the verdict, Rodgers informed the trial court he wished to file a motion for new trial. Rodgers also requested the reappointment of the defense panel attorney to prepare the new trial motion. The trial court denied Rodgers' request, stating "[w]e aren't doing anything like that right now, Mr. Rodgers." One month later, Rodgers filed a written motion again requesting the appointment of counsel "to perfect and file" a motion for new trial. The trial court denied his motion, reminding Rodgers that he "made th[e] election to represent [him]self" and insisted on self-representation even after being counseled against it.

Rodgers insisted he wanted to file a motion for new trial and if need be he himself would prepare the motion, but he needed a copy of the trial transcript and two months to "perfect the motion." Rodgers asserted he had ten to fifteen grounds for his new trial motion, including claims based on newly discovered evidence and prosecutorial misconduct during closing argument. The trial court denied his request for the transcript.

Subsequently, Rodgers filed his new trial motion, along with a motion to continue sentencing. At the sentencing, the court asked Rodgers if there was any reason why sentencing should not proceed. Rodgers responded he needed additional time to review his probation report and prepare a sentencing brief; however, the trial court denied his request for a continuance and proceeded with sentencing.

When the trial court and the prosecutor began to discuss the possible length of his sentence, Rodgers informed the court he was unfamiliar with the applicable sections of the California Penal Code in his case and asked that they be explained to him. The trial court responded, "Mr. Rodgers, if you had a lawyer, he could explain it to you." Rodgers did not request appointment of counsel for sentencing, but did ask that he be allowed to bring his family members to court to speak on his behalf. The court obliged and continued the matter for two days.

When the hearing reconvened, Rodgers again expressed frustration and confusion with the statutory sentencing provisions:

> RODGERS: Again, Your Honor, you are disrespecting me and talking to him not me.
>
> COURT: That's because you don't know what I am talking about, Mr. Rodgers.
>
> RODGERS: That's what I understand. That's no excuse.
>
> COURT: I told you at the time that you did this that you would be held to the same standards as a lawyer. You are being held to the same standards as a lawyer. That's an election you made.

> RODGERS: I don't know why this is such a discrimination against pro per.
>
> COURT: Not discriminating you [sic], sir. You are held to the same standards as a lawyer.

Rodgers now claims that by refusing to appoint counsel for the motion for new trial, the trial court violated his Sixth Amendment right to counsel at a critical stage in the proceedings.[1]

## JURISDICTION

This is an appeal of right from a judgment of the district court, which had jurisdiction under 28 U.S.C. § 2254. The district court entered judgment on May 4, 2010, which was timely appealed on May 17, 2010. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 2253(a).

## STANDARD OF REVIEW

Section 2254 provides federal habeas corpus relief to state

---

[1]The certified issue does *not* include Rodgers' argument that he was denied counsel during sentencing. Instead of including the issue in his brief as an uncertified issue under Ninth Circuit Rule 22(e), Rodgers improperly included it as part of the certified issue. Even if we addressed Rodgers' argument, he would not be entitled to relief. Although it is clearly established law that sentencing is a "critical stage" of a criminal proceeding, *see Mempa v. Rhay*, 389 U.S. 128, 134 (1967), the California appellate court held Rodgers "never requested the appointment of counsel for his sentencing hearing," and "the only request he made for counsel was his July 16, 2003, motion for counsel which was expressly 'to perfect and file defendant's Motion for a New Trial.' " This finding, supported by the record, constitutes "a determination of a factual issue made by a State court," and as such, is "presumed to be correct." *See* 28 U.S.C. § 2254(e). Because Rodgers has not met the difficult "burden of rebutting the presumption of correctness by clear and convincing evidence," this Court must defer to the state court's factual determination. *Id.*

prisoners who are in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court's decision to deny a habeas petition under Section 2254 is reviewed *de novo*. *Alvarado v. Hill*, 252 F.3d 1066, 1068 (9th Cir. 2001); *Solis v. Garcia*, 219 F.3d 922, 926 (9th Cir. 2000). Its findings of fact are reviewed for clear error. *Solis*, 219 F.3d at 926. A state court's findings of fact are entitled to a presumption of correctness unless the petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Solis*, 219 F.3d at 926. Because Rodgers' petition was filed after the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") effective date of April 24, 1996, its provisions apply. *See Woodford v. Garceau*, 538 U.S. 202, 205-06 (2003).

In short, AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Under AEDPA, this Court cannot grant habeas relief unless the state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

The Supreme Court has made clear the "contrary to" and "unreasonable application" clauses have distinct meanings. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is contrary to clearly established federal law where the court fails to apply the correct controlling authority; or if it applies controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. *Id.* at 413-14; *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an unreasonable application of clearly established

federal law if the state court identifies the correct governing legal principle from Supreme Court precedent, but unreasonably applies that principle to the facts of the case, or unreasonably extends a legal principle to a new context where it should not apply, or fails to extend the principle to a context in which it should apply. *Williams*, 529 U.S. at 407; *Brown*, 544 U.S. at 141. The state's application of federal law "must be shown to be not only erroneous, but objectively unreasonable." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quotation omitted).

Furthermore, AEDPA's "clearly established law" requirement limits the area of law on which habeas courts may rely — the only definitive source of federal law is Supreme Court precedent. *See Williams*, 529 U.S. at 412; *Mendez v. Knowles*, 556 F.3d 757, 767 (9th Cir. 2008). Circuit precedent may provide "persuasive authority" for purposes of determining whether a state court decision is an "unreasonable application" of Supreme Court precedent. *Id.* at 767. However, only Supreme Court holdings are binding on state courts, and "only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *see also Williams*, 529 U.S. at 412.

When applying these standards, this Court must review the "last reasoned state court decision." *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Here, the California Supreme Court denied Rodgers' Sixth Amendment claim without issuing a reasoned decision. Therefore, the August 2005 decision of the California appellate court, denying Rodgers' Sixth Amendment claim on direct review, is the last reasoned decision of a California court, and the decision we must review.

## ANALYSIS

With these principles in mind, we now turn to Rodgers' challenge to the state court's ruling on his Sixth Amendment

claim, which requires this Court to answer three specific questions. First, whether the pre-appeal time period for filing a motion for new trial is a "critical stage" under "clearly established federal law;" if so, then whether denying a request for counsel at that stage, because a defendant previously waived his right to trial counsel, is a violation of "clearly established federal law;" and, if so, whether the California appellate court decision was "contrary to, or involved an unreasonable application of" clearly established law.

### A Post-Verdict New Trial Motion is a "Critical Stage"

**[1]** The Supreme Court's Sixth Amendment jurisprudence has long recognized that a defendant's right to counsel is a fundamental component of our criminal justice system. *See Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004); *United States v. Cronic*, 466 U.S. 648, 653-54 (1984). Indeed, "[w]ithout the aid of counsel, a defendant may be unable to prepare an adequate defense and though 'he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.' " *Robinson v. Ignacio*, 360 F.3d 1044, 1056 (9th Cir. 2003) (quoting *Powell v. Alabama*, 287 U.S. 45, 69 (1932)). For that reason, the right to counsel, which originated as a trial right, has been extended by the Supreme Court to various "critical stages," which the Court defines as any "stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa*, 389 U.S. at 134.

**[2]** Although the Supreme Court has provided specific examples of "critical stages" under the Sixth Amendment, it has never squarely addressed whether a post-verdict motion for new trial is one of those stages. *E.g.*, *Estelle v. Smith*, 451 U.S. 454, 474 (1981) (psychiatric interviews); *Mempa*, 389 U.S. at 134 (sentencing); *United States v. Wade*, 388 U.S. 218, 224-25 (1967) (pretrial line up); *White v. Maryland*, 373 U.S. 59, 60 (1963) (preliminary hearings); *Douglas v. California*, 372 U.S. 353, 355-56 (1963) (appeals). However, the Supreme Court's "silence on this particular issue need not

prevent us from identifying and applying the [Court's] general governing principles to the case at hand." *Ignacio*, 360 F.3d at 1056-57. As explained in *Ignacio*, "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." *Id.* at 1057 (quoting *Williams*, 529 U.S. at 382 (opinion of Stevens, J.)[2]). Some of our sister circuits have likewise recognized that AEDPA encompasses more than "bright-line rules" laid down by the Supreme Court. *See, e.g.*, *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) ("The [Supreme] Court has made clear that its relevant precedents include not only bright-line rules but also the legal principles and standards flowing from precedent."); *Hart v. Attorney General of Florida*, 323 F.3d 884, 893 n.16 (11th Cir. 2003).

This Circuit recognizes that, because of AEDPA, we "can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue." *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000). For that reason, Rodgers misplaces his reliance on this Court's opinion in *Menefield v. Borg*, which held that a post-verdict motion for a new trial is a "critical stage" of prosecution under the Sixth Amendment. 881 F.2d 696 (9th Cir. 1989). However, as discussed above, Ninth Circuit precedent "may be persuasive authority for purposes of

---

[2]The language quoted in *Ignacio* is taken from Part II of Justice Stevens' opinion in *Williams*, which was joined only by four justices. A majority of the Court instead joined Part II of Justice O'Connor's opinion, which disagreed with Justice Stevens' "erroneous interpretation" of AEDPA due to his failure to "give independent meaning to both the 'contrary to' and 'unreasonable application' clauses of the statue." *Williams*, 529 U.S. at 404. However, we do not interpret Justice O'Connor's opinion as inconsistent with that of Justice Stevens regarding AEDPA's "clearly established Federal law" requirement. Justice O'Connor specifically agreed with Justice Stevens that "whatever would qualify as an old rule under our *Teague* jurisprudence will constitute 'clearly established Federal law' " under § 2254(d)(1), with the significant "caveat" that, unlike *Teague*, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Id.* at 412.

determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.' " *Duhaime*, 200 F.3d at 600. Therefore, when faced with novel situations, "we may turn to our own precedent, as well as the decisions of other federal courts, in order to determine whether the state decision violates the general principles enunciated by the Supreme Court and is thus contrary to clearly established federal law." *Ignacio*, 360 F.3d at 1057.

**[3]** The Supreme Court's Sixth Amendment doctrine concerning a defendant's right to counsel is not a bright-line rule. In *United States v. Ash*, the Court recognized that the right to counsel encompassed a "test" which requires an "examination of the event [at issue] in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." 413 U.S. 300, 313 (1973) (relying on the "history and expansion of the Sixth Amendment counsel guarantee"). Similarly, in *Mempa*, the Court held a "critical stage" involves aspects of the criminal prosecution "where substantial rights of a criminal accused may be affected." 389 U.S. at 134.

There is no doubt a post-verdict motion for new trial is one of those aspects of the prosecution. As this Court held in *Menefield*, "the motion for a new trial is the defendant's last opportunity for an unconstrained review on the merits of the evidence against him." 881 F.2d at 699. This is so because on appeal, "both jury conclusions and the factual decisions of the trial court are either immune from review or treated under a highly deferential standard." *Id.* Not only can counsel ensure that a defendant's substantive rights are protected, but counsel can also utilize his "understanding of legal rules and his experience in presenting claims before a court," which is ordinarily required for an effective new trial motion. *Id.* To be sure, "[t]he presence of trained counsel at this stage insures that the most favorable arguments will be presented and 'that the accused's interests will be protected consistently with our the-

ory of criminal prosecution.' " *Id.* (quoting *United States v. Wade*, 388 U.S. 218, 227 (1967)).

**[4]** For those reasons, we were compelled to hold that a post-verdict new trial motion is a "critical stage" under the Sixth Amendment. *See Menefield*, 881 F.2d at 699. In so holding, we identified and relied solely on Supreme Court precedent. *Id.* at 698-99 (citing *Mempa*, 389 U.S. at 134 and *Ash*, 413 U.S. at 315). This fact was recognized in *Bell v. Hill*, where we reaffirmed *Menefield* relied "exclusively on Supreme Court precedent addressing the Sixth Amendment right to counsel" in finding that "the right to counsel attaches to the motion for a new trial stage." 190 F.3d 1089, 1092 (9th Cir. 1999).[3]

The parties to this case argued that a split exists among the appellate circuits as to whether a post-verdict motion for new trial is a "critical stage" under the Sixth Amendment. They are wrong. Upon careful review, every federal circuit that has addressed whether a post-trial, pre-appeal motion for a new trial constitutes a "critical stage" has concluded that it does. *See, e.g.*, *McAfee v. Thaler*, 630 F.3d 383, 393 (5th Cir. 2011); *Kitchen v. United States*, 227 F.3d 1014, 1019 (7th Cir. 2000); *Williams v. Turpin*, 87 F.3d 1204, 1210 & n.5 (11th Cir. 1996); *Robinson v. Norris*, 60 F.3d 457, 460 (8th Cir. 1995); *Menefield*, 881 F.2d at 699; *see also Nelson v. Peyton*,

---

[3]*Bell*, a case decided under *Teague v. Lane*, 489 U.S. 288 (1989), is consistent with the holding in *Williams* that whatever qualifies as an old rule under *Teague* constitutes "clearly established federal law" under Section 2254(d)(1). *See Williams*, 529 U.S. at 412 But we recognize that *Bell* also presents another question, namely, whether *Menefield* satisfies the Court's caveat that "the *source* of clearly established law" is Supreme Court jurisprudence. *Id.* (emphasis added). Though we are persuaded that Supreme Court jurisprudence was indeed the "source" of *Menefield*'s rule that the right to counsel attaches to the motion for a new trial, we sidestep that question by holding, as discussed *infra*, that the Supreme Court's Sixth Amendment "critical stage" jurisprudence establishes a legal principle that "clearly extends" to the pre-appeal motion for new trial. *See Murdoch v. Castro*, 609 F.3d 983, 992 (9th Cir. 2010).

415 F.2d 1154, 1157 (4th Cir. 1969); *Baker v. Kaiser*, 929 F.2d 1495, 1499 (10th Cir. 1991) (quoting *Nelson*, 415 F.2d at 1157).

The majority of these courts focus on the *timing* of the motion for new trial. For instance, the Fifth, Seventh and Eighth Circuits, all distinguish between post-trial motions filed *prior* to an appeal, which the courts consider "not collateral," and those filed *after* an appeal, which are deemed "collateral." *See, e.g.*, *McAfee*, 630 F.3d at 393; *Kitchen*, 227 F.3d at1019; *Robinson*, 60 F.3d at 459-60. In addition to timing, some of these courts focus on the nature of the motion, and rely on the general policies ensuring effective representation in our adversary system. *See, e.g.*, *Williams*, 87 F.3d at 1210.

The parties point to three circuits that appear to have reached a contrary result; however, those circuits did not address the specific issue here. *See United States v. Tajeddini*, 945 F.2d 458, 470 (1st Cir. 1991), *abrogated on other grounds, Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *United States v. Lee*, 513 F.2d 423, 424 (D.C. Cir. 1975); *United States v. Birrell*, 482 F.2d 890, 892 (2d Cir. 1973). That is, those circuits did not consider whether the post-trial, pre-appeal time period for filing a motion for new trial is a "critical stage" under the Sixth Amendment. Instead, those courts categorized the motions at issue as "collateral" because they were filed *after* direct appeals were exhausted, a result consistent with the Supreme Court's holding that the right to counsel ceases to exist after a defendant's first appeal. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). We have found no case that holds the *pre-appeal* time period is not a "critical stage."[4]

---

[4]At least one other circuit has made the same finding. *See McAfee*, 630 F.3d at 393 ("Every federal circuit court to address the question of whether the post-trial, pre-appeal time period for making a motion for new trial is a critical stage has concluded that it is.").

**[5]** Accordingly, guided by this "persuasive authority," *Mendez*, 556 F.3d at 767, we conclude that it is clearly established Supreme Court law that a pre-appeal motion for new trial is a "critical stage" under the Sixth Amendment. This conclusion is in accord with the Supreme Court's long-standing recognition that the right to counsel is one of the most fundamental in our criminal justice system. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." *Penson v. Ohio*, 488 U.S. 75, 84 (1988). For this reason, examples are legion where the Supreme Court applied its "critical stages" jurisprudence to particular fact-patterns, including psychiatric interviews, sentencings, pretrial line ups, preliminary hearings, and appeals. The Supreme Court's Sixth Amendment "critical stage" jurisprudence establishes a legal principle that "clearly extends" to the context of a pre-appeal motion for new trial. *See Murdoch v. Castro*, 609 F.3d 983, 992 (9th Cir. 2010). A contrary conclusion would represent an unreasonable application of that principle. *See Williams*, 529 U.S. at 407.

### Re-Asserting the Right to Counsel After a *Faretta* Waiver

Before reviewing the state court's decision to determine whether it was contrary to, or involved an unreasonable application of, "clearly established federal law," we next address whether a criminal defendant can re-assert the right to counsel after previously waiving it.

**[6]** The state court's rejection of Rodgers' claim turned on the application of the California standard governing the reappointment of counsel previously waived. Therefore, our finding that the right to counsel for a new trial motion is "clearly established" does not end our inquiry. This Court must also determine whether the denial of Rodgers' request for counsel to file such a motion because he previously

waived his right to trial counsel was contrary to, or involved an unreasonable application of, clearly established law.

**[7]** While the Sixth Amendment's guarantee of the right to counsel at all "critical stages" has been long established, the Supreme Court has also recognized that a criminal defendant has a "reciprocal constitutional right to 'proceed without counsel when he voluntarily and intelligently elects to do so.' " *John-Charles v. California*, 646 F.3d 1243, 1248 (9th Cir. 2011) (quoting *Faretta v. California*, 422 U.S. 806, 807 (1975)). As we have previously acknowledged, "the Supreme Court has never explicitly addressed a criminal defendant's ability to re-assert his right to counsel . . . after a previous waiver of that right during trial . . . ." *Ignacio*, 360 F.3d at 1056. However, applying the Supreme Court's general governing principles described above, we previously determined it is "clearly established federal law" that a defendant's re-assertion of the right to counsel at a separate, post-trial proceeding cannot be denied simply "on the grounds that the defendant has previously waived that right." *Id.* at 1059. We abide by our earlier holding.

In *Robinson v. Ignacio*, a case with strikingly similar facts to this case, a habeas petitioner alleged the state trial court should have allowed him to revoke his waiver of trial counsel and should have appointed counsel when he requested representation for sentencing. *Id.* at 1056. Recognizing the Supreme Court's rule that the right to counsel can be waived, we held:

> Because the right to counsel is so central to our concepts of fair adjudication, we are reluctant to deny the practical fulfillment of the right—even once waived—absent a compelling reason that will survive constitutional scrutiny . . . . Therefore, although we recognize the right to counsel—once waived—is no longer absolute, we start with the strong presump-

tion that a defendant's *post-trial* request for the assistance of an attorney should not be refused.

*Id.* at 1058 (quoting *Menefield*, 881 F.2d at 700) (emphasis added). We then emphasized that trial courts have discretion to deny requests for the appointment of counsel in some instances, "such as when requests are made on the eve of trial for purposes of delay." *Id.* (citing *Menefield*, 881 F.2d at 700). But, there is a "substantial practical distinction between delay on the eve of trial and delay at the time of a post-trial hearing." *Id.* Indeed, "post-verdict continuances [are] far less likely to 'substantially interfere with the court's or the parties' schedules.' " *Id.* (quoting *Menefield*, 881 F.2d at 700-01). Therefore, absent extraordinary circumstances, "a defendant's *post-trial* revocation of his wavier should be allowed unless the government can show that the request is made 'for a bad faith purpose.' " *Id.* (citing *Menefield*, 881 F.2d at 701). As explained in *Ignacio*, the conclusion that a defendant retains his right to re-assert the right to counsel *post-trial* is " 'foreordained by the Sixth Amendment and Supreme Court precedent.' " *Id.* at 1058 n.7 (citing *Bell*, 190 F.3d at 1092-93).

Numerous other federal circuit courts have also held that a trial court must give due consideration to a request for counsel at a post-trial proceeding, despite a previous waiver of trial counsel. *See, e.g.*, *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir. 1991) (holding trial court violated the Sixth Amendment by refusing to appoint counsel to represent defendant at sentencing); *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir. 1989) (holding defendant's express revocation of an earlier waiver of counsel at sentencing requires "at least an inquiry by the district judge into the defendant's representational desires"); *United States v. Holmen*, 586 F.2d 322, 324 (4th Cir. 1978) (holding it was error to not have appointed counsel at the sentencing stage following the withdrawal of waiver of trial counsel); *Davis v. United States*, 226 F.2d 834, 840 (8th Cir. 1955) (holding that a request for counsel prior

to sentencing after a wavier of trial counsel requires the court to inquire whether the waiver has been revoked).

Five federal circuits have interpreted the Supreme Court's Sixth Amendment jurisprudence "to mean that the right to counsel is so integral to the fair administration of our justice system that a defendant who has waived his right to counsel may nonetheless re-assert" it; no circuit court has ruled to the contrary. *Ignacio*, 360 F.3d at 1059. Given these convergent holdings, as well as the general principles underlying the Supreme Court's Sixth Amendment jurisprudence, it is "clearly established federal law" that a defendant's re-assertion of the right to counsel at a post-trial proceeding cannot be denied simply "on the grounds that the defendant has previously waived" it. *Ignacio*, 360 F.3d at 1059.

Although we recognize *Robinson v. Ignacio* as binding on this Court, we must address a recent case that, at first glance, calls *Ignacio*'s holding into question. In *John-Charles v. California*, this Court applied a narrower interpretation of the "clearly established" requirement and addressed the appeal of a habeas petitioner who requested the appointment of counsel *during trial* after initially waiving his right to trial counsel. 646 F.3d at 1250-51. As in *Ignacio*, we observed that the Supreme Court in *Faretta* left open the question of "whether and under what conditions a defendant who validly waives his right to counsel has a Sixth Amendment right to reassert it later in the *same stage* of his criminal trial." *Id.* at 1249 (emphasis added). Specifically, we held:

> In short, the Supreme Court has not clearly articulated a constitutional right to *post-Faretta* reappointment of counsel *during trial*. It has not defined the standard of review that should apply to trial courts' handling of such issues. And it has not spoken on whether a trial court's error in ruling on a reappointment request is structural or trial error. This silence

compels us to defer to the state court's reasonable attempts to fill the void.

*Id.* at 1251 (emphasis added). Rather than overruling *Ignacio*, we carefully distinguished it, repeatedly emphasizing that the claim in *John-Charles* involved the re-assertion of the right to counsel *during trial* — not during a separate, post-trial proceeding. *Id.* at 1252. In fact, we confirmed that *Ignacio* "did not purport to address the question of whether a self-represented defendant has a right to reappointment of counsel *once trial proceedings have begun*, *rather than during a subsequent proceeding*." *Id.* (emphasis added).

The narrower interpretation of Section 2254's "clearly established" requirement in *John-Charles* stemmed from two Supreme Court decisions indicating that its precedent must be "closely on point" or give a "clear answer to the question presented" to qualify as "clearly established federal law." *Id.* at 1248 (citing *Wright v. Van Patten*, 552 U.S. 120, 125 (2008) and *Carey v. Musladin*, 549 U.S. 70 (2006)). However, unlike this case, those two cases involved novel situations in which the Supreme Court was silent. *See Wright*, 552 U.S. at 125 (finding it was not clearly established law that "counsel's participation by speaker phone [in a plea hearing] should be treated as a 'complete denial of counsel.' "); *Carey*, 549 U.S. at 77 (holding there was no clearly established law regarding the prejudicial effect of spectators' courtroom conduct on fair trial rights). Because this intervening Supreme Court authority defining the scope of AEDPA review is not "clearly irreconcilable" with our decision in *Robinson*, we are not free to "reject the prior opinion of this court as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

**[8]** *Ignacio* therefore compels our conclusion that it violates clearly established federal law to deny counsel in a post-trial, pre-appeal proceeding simply because the defendant has previously exercised his right to represent himself. We are not

persuaded that Rodgers' claim differs from that of the petitioner in *Ignacio* merely because it deals with a new trial motion rather than sentencing. In all material aspects, Rodgers' claim is indistinguishable from that in *Ignacio*, in which we focused not on attributes inherent in sentencing proceedings, but rather on the basic characteristics present in all post-trial proceedings. In fact, a motion for new trial and sentencing are the main elements of a post-trial proceeding. For this very reason, we previously recognized:

> It is not surprising that a criminal defendant, having decided to represent himself and then having suffered a defeat at trial, would realize that he would be better served during *the remainder of the case* by the assistance of counsel. A criminal defendant may initially assert his right to self-representation for reasons that later prove unsound. The accused may doubt the willingness of an appointed attorney to represent his interests. More often, the accused may have a baseless faith in his ability to mount an effective defense. The lure of self-representation may, however, exact a significant price; lost at trial, the defendant may miss important opportunities and even create gaping holes in his own case. The accused has little recourse against the failings caused by his own inartfulness.

*Menefield*, 881 F.2d at 700 (emphasis added). Indeed, forcing criminal defendants to stumble through post-trial proceedings — sentencings or otherwise — "serves neither the individual nor our system of adversarial justice well." *Id.*

## The California State Court's Decision

Having identified the "clearly established federal law" that governs Rodgers' Sixth Amendment claim, we review the state court's decision to determine whether it was contrary to, or involved an unreasonable application of, that law.

Rodgers informed the trial court he wished to file a motion for new trial immediately following the guilty verdict. At that time, Rodgers requested the reappointment of counsel, but the trial court denied Rodgers' request, holding:

> We aren't doing anything like that right now, Mr. Rodgers. If you have some request that you want to make a motion for something, I expect that you will do that and you will serve it, and you will file it, we will take it up at that time.

A month later, Rodgers again requested counsel for perfecting a new trial motion, this time in a written motion. The trial court once more denied Rodgers' request, and the following exchange occurred:

> RODGERS:   Your Honor, also, if you are going to deny counsel —
>
> COURT:    You are not going to get counsel, Mr. Rodgers. You made this election to represent yourself. Everybody tried to talk you out of it at the time. You insisted you wanted to do it. You are doing it. We aren't going to substitute in an attorney at this time.

In addressing the trial judge's denial of Rodgers' request for counsel, the California appellate court reasoned:

> When, as here, a defendant has exercised his right to represent himself at trial and later seeks to have counsel appointed, the court's decision to deny counsel is reviewed for an abuse of discretion. In determining whether the court abused its discretion, we consider the "totality of the facts and circumstances."

(internal citations omitted). The court then focused on the fact Rodgers switched between representation and self-representation at various times throughout the case, and noted Rodgers' motion did not include facts or reasons in support. The court also held Rodgers "exhibited considerable knowledge of both trial tactics and trial procedure," and ultimately concluded the trial judge did not abuse his discretion in declining to appoint counsel for a new trial motion.

**[9]** The California appellate court's decision is indistinguishable from the state court decision we held to be contrary to clearly established federal law in *Ignacio*. There, as here, the state court incorrectly applied an abuse of discretion standard in determining the trial court did not violate the petitioner's Sixth Amendment rights. As we explained in *Ignacio*, and as holds equally true here, this standard permitted the state court to affirm the denial of the defendant's timely request for representation without any basis other than "the discredited idea that once waived, the right to counsel cannot be reasserted at sentencing." *Ignacio*, 360 F.3d at 1061. It is "clearly established federal law" that the post-trial motion for new trial is a "critical stage" that implicates the right to counsel, as is a defendant's right to re-assert the right to counsel during post-trial proceedings. For that reason, trial courts cannot deny a defendant's timely request for representation without a sufficient reason. Here, the state trial court had no such reason, and to the extent the California appellate court found such reason, its "decision was based on an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d)(2).

While Rodgers did not give any reasons for his request for counsel, it is clear the trial judge rejected his request "based primarily on the discredited idea that once waived, the right to counsel cannot be re-asserted . . . ." *Ignacio*, 360 F.3d at 1061. Regardless, denying Rogers' request because he failed to articulate a reason is tantamount to denying his request because of his prior *Farretta* waiver. Indeed, the obvious reason Rodgers wanted counsel — even if he did not explicitly

state it — was his belief that trained counsel would be better able to prepare his new trial motion.

**[10]** Because the trial court's focus on Rodgers' waiver of counsel at trial was inappropriate, we conclude its denial of Rodgers' request violated his Sixth Amendment right to counsel. Therefore, the California appellate court's decision, which upheld the trial judge's denial of Rodgers' request, was "contrary to . . . clearly established federal law."

### Uncertified Issues

We deny Rodgers' motion to expand the Certificate of Appealability pursuant to Ninth Circuit Rule 22-1 and decline to address the uncertified issues raised in his brief, as Rodgers has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1245 (9th Cir. 2005).

### CONCLUSION

We acknowledge the difficulties that faced the trial judge in dealing with a defendant who alternated back and forth between asking for counsel during pretrial proceedings and then chose to go it alone at trial. However, those difficulties — while frustrating — must give way to constitutional concerns and a defendant's right to counsel at all "critical stages" of his criminal prosecution.

Accordingly, we hold Rodgers' Sixth Amendment right to counsel was violated when the trial court denied his timely request for representation for a new trial motion based on the notion that once waived, the right to counsel cannot be reasserted. This holding is consistent with our previous rulings, as well as those of numerous federal circuit courts applying clearly established Supreme Court precedent. Furthermore, due to the fundamental importance of the right to counsel, Rodgers need not prove prejudice and a harmless error analy-

sis is not required. *See Ignacio*, 360 F.3d at 1061 (citing *Cronic*, 466 U.S. at 659).

The Supreme Court has instructed that courts have "broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.' " *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). Regarding the right to counsel, we previously held that a habeas remedy "should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred." *Nunes v. Mueller*, 350 F.3d 1045, 1057 (9th Cir. 2003). Moreover, the Supreme Court "has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." *Hilton*, 481 U.S. at 775.

[11] Therefore, in this case, a remand to the California trial court is appropriate. The district court is directed to remand this matter to the state trial court for Rodgers to receive effective assistance of counsel for consideration of filing a new trial motion.

**REVERSED** and **REMANDED**.