319 P.3d 456

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Joseph PITTS, Petitioner/Defendant–Appellant.**

**No. SCWC–30559.**

Supreme Court of Hawai'i.

Jan. 22, 2014.

25.  *See supra* note 24.

Kevin O'Grady, Honolulu, for petitioner.

Sonja P. McCullen, for respondent.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, McKENNA, and POLLACK, JJ.

Opinion of the Court by McKENNA, J.

## I. Introduction

This court accepted Petitioner/Defendant–Appellant Joseph Pitts' Application for Writ of Certiorari [1] and ordered supplemental briefing addressing whether the circuit court erred in not appointing substitute counsel for Pitts for post-verdict motions and sentencing. We hold that the circuit court [2] erred by not appointing substitute counsel for Pitts' post-verdict motions because post-verdict proceedings are critical stages in the prosecu-

---

1. We did not accept certiorari for the purpose of addressing Pitts' question presented, as the record does not support Pitts' allegation of error. We accepted certiorari for the purpose of ad-

dressing the question posed to the parties for supplemental briefing.

2. The Honorable Glenn J. Kim presided.

tion. We also hold that the circuit court erred by not appointing Pitts substitute counsel for sentencing.

## II. Background

Pitts was tried for attempted murder in the second degree. Pitts was alleged to have stabbed his close friend.

After opening statements, Pitts expressed a desire to represent himself. John Schum ("Schum"), Pitts' fourth court-appointed attorney (appointed after Pitts had developed personal conflicts with his three preceding court-appointed attorneys), who represented Pitts at that point, stated the problem was Pitts believed "he knows the case better than [Schum] do[es] and that the truth will set him free." The circuit court asked Pitts to think about his decision over the weekend. The following Monday, before trial resumed, Pitts informed the circuit court that he would "push [his] stubbornness aside" and have Schum continue representing him.

Later, during a break in the State's case, Pitts again announced his intention to fire Schum. After giving Pitts a day to think about his decision, the circuit court colloquied Pitts regarding his right to counsel, Pitts waived his right to counsel, and Schum was assigned as standby counsel. There were no express limits on the time frame for which Schum would act as standby counsel (i.e., through trial, through post-trial motions, through sentencing, through appeal, etc.).

As the State's case progressed, Pitts expressed to the court (outside the presence of the jury) that he wanted Schum to resume representing him because he (Pitts) was overwhelmed. Schum stated that he was not sure he could resume representation because of the ethical problem caused by Pitts' accusation that Schum and the prosecutor "shar[ed] privileged information and attempt[ed] to sell [Pitts out]." The circuit court denied Pitts' request to have Schum resume representation for two reasons: first, because of Schum's perceived ethical problem, and second, because "the bottom line is ... that [Pitts] waived [his] right to counsel." For the rest of the trial, Pitts was pro se.

On March 10, 2010, the jury returned a guilty verdict.

On March 17, 2010, Schum filed a timely Motion to Withdraw as Stand-by Counsel, Appoint Substitute Counsel and Declare Mistrial. In his declaration attached to the motion, Schum explained that Pitts had asked for Schum's help in requesting a new trial, preparing for the sentencing hearing, and starting work on an appeal. According to Schum, he told Pitts resuming representation was not possible because Pitts had waived his right to counsel and accused Schum of ethical violations. Schum contacted the Office of Disciplinary Counsel, who advised him that it would be possible for Schum to file the instant motion so long as Pitts concurred so that Pitts' "full rights both post-trial and on appeal would be preserved...." Pitts concurred. Thus, the motion requested that Schum be allowed to withdraw as standby counsel, that substitute counsel be appointed to assist Pitts post-trial and on appeal, and that a mistrial be declared because Pitts' waiver of the right to counsel was involuntary. The State filed its Opposition on April 5, 2010, arguing that Pitts made a knowing and voluntary waiver of his right to counsel.

On April 7, 2010, the circuit court heard the motion. Addressing Schum, the circuit court stated that Schum's services as standby counsel ended when the jury rendered its verdict:

> First of all, I don't think it was required of you to file a motion to withdraw as standby counsel. You no longer represent Mr. Pitts. The very fact that I asked you to be standby counsel at trial tells us that. Mr. Pitts waived his right to counsel very clearly, as [the State] said. To this day, he's still representing himself. The trial is over. I think we'd all agree on that. So you're no longer standby counsel. I don't think you need to file a motion to withdraw as standby counsel.

The circuit court also opined that Schum might not have standing to file a motion to appoint substitute counsel. In any event, the circuit court denied the motion for a mistrial (construed as a motion for a new trial), both on the merits, stating, "Mr. Pitts waived his right to counsel very clearly," and because it

"[did not] think [Schum had] standing to bring [the motion]."

The circuit court then directed Pitts to file any post-trial motions pro se. The circuit court stated that it would consider any motion for a new trial filed by Pitts to be timely, even though filed beyond ten days after the jury delivered its verdict.[3] Pitts expressed a desire to be represented by counsel for sentencing and appeal, and the circuit court directed him to make those requests in his own motions.

The day after the hearing, Pitts filed five post-verdict motions pro se: (1) Motion to Set A[s]ide Verdict and Enter [Judgment] of Acquittal Hawaii Rules of Penal Procedure Rule 29(c) or in the Alternative Grant Defendant New Trial HRPP Rule 33 HRS § 635–56; (2) Motion for New Trial or in the Alternative Motion for Mistrial; (3) Motion to be Appointed Counsel for Sentencing and Appeal; (4) Motion for Psychiatric Evaluation 3 Panel; and (5) Request for Continuance. On May 12, 2010, the circuit court held a hearing on Pitts' motions. The circuit court reiterated that Schum "has nothing to do with [Pitts'] case at this point. [Pitts is] pro se. [Pitts] waived counsel." At this hearing, Pitts repeatedly implored the circuit court for an attorney.

First, the following exchange took place after the circuit court asked if Pitts had anything to add to his Motion to Set Aside Verdict and Enter Judgment of Acquittal:

> MR. PITTS: Your Honor, first I would like to say I would like an attorney, but if I can't—I can't do this by myself. I really need an attorney.
>
> THE COURT: We'll get to that motion. I'm not going to give you an attorney for your sentencing today nor for these motions. You filed them pro se. You've been pro se. It's your motion.

Second, the following exchange took place after the circuit court asked if Pitts had anything to add to his Motion for New Trial, or in the alternative, Motion for Mistrial:

> MR. PITTS: Your Honor, again, as you can see you've just denied all my motions. I can't do this. I need an attorney to help me, and the more you dismiss things, the more it shows me that I need an attorney.
>
> THE COURT: Mr. Pitts, we're going to get to your motion for an attorney.
>
> MR. PITTS: I mean like now.
>
> THE COURT: No. No. You've waived counsel and you're pro se, and you didn't make a motion for the appointment of another attorney, and I'm not sure I would have granted it anyway.

Lastly, Pitts made the following remark after the circuit court asked if Pitts had anything to add to his Motion for Psychiatric Evaluation or a 3 Panel: "All right, I made [a motion for a 3 panel] which you're gonna probably dismiss, so I need an attorney."

The circuit court did grant Pitts' motion for appointment of appellate counsel. The circuit court entered its Judgment of Conviction and Sentence on May 12, 2010. Pitts, represented by appellate counsel, timely appealed. The ICA concluded that Pitts' appeal was without merit and affirmed his conviction.

## III. Discussion

### A. The Parties' Supplemental Briefing

Pitts argues, "Appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." In support of his argument, he cites *D'Ambrosio v. State*, 112 Hawai'i 446, 146 P.3d 606 (App. 2006). He continues, without citation, "The circuit court ignored the 'critical' stage of the post-verdict to sentencing part of the crimi-

---

**3.** The circuit court was not authorized to extend Pitts' deadline for a motion for a new trial in this way. Hawai'i Rules of Penal Procedure ("HRPP") Rule 45(b) (2010) states, "[T]he court may not extend the time for taking any action under [Rule] 33 ... except and under the conditions stated in [it.]" Under HRPP Rule 33 (2010), a motion for a new trial "shall be made within 10 days after verdict or finding of guilty or within such further time as the court may fix during the 10–day period." The jury rendered its verdict on March 10, 2010. The hearing on April 7, 2010 took place 28 days after the verdict. Therefore, the circuit court violated HRPP Rule 45(b) by allowing Pitts to file a pro se motion for new trial beyond the ten-day deadline set forth in HRPP Rule 33.

nal proceedings against Pitts." He continues, without citation, "The postverdict and sentencing time is still a critical part of the proceedings and hence Pitts was entitled to have counsel appointed."

The State argues that the circuit court did not err by not appointing substitute counsel post-verdict. The State cites to a federal habeas corpus case that ostensibly favors Pitts' position: *Rodgers v. Marshall,* 678 F.3d 1149, 1163 (9th Cir.2012)("It is 'clearly established federal law' that the posttrial motion for new trial is a 'critical stage' that implicates the right to counsel, as is a defendant's right to re-assert the right to counsel during post-trial proceedings.")[4] The State cited to *Rodgers* for the requirement that a defendant must make a timely request for representation. *See Rodgers,* 678 F.3d at 1163 ("[T]rial courts cannot deny a defendant's timely request for representation without a sufficient reason.") (emphasis added). The State goes on to argue that Pitts' request for counsel for his post-verdict motions was untimely, having been made on the day those motions were heard, on May 12, 2010. Further, the State argues that Pitts "made abundantly clear that no attorney would suffice," pointing out that Pitts had been through four court-appointed attorneys for trial. The State summed up Pitts behavior as "manipulative and abusive ... amounting to bad faith."

The State concluded that the circuit court did not err by not appointing substitute counsel for Pitts for post-verdict motions and sentencing because Pitts waived his right to counsel during trial; the circuit court considered the timing of Pitts' request for counsel; the circuit court had no discretion in sentencing Pitts; and because the circuit court was aware of Pitts' behavior towards his attorneys. Alternatively, the State argued that if this court should hold that Pitts should have been appointed counsel for his post-verdict

motions, "a remand for appointment of counsel should be limited to re-litigating Pitts' post-verdict motions and for sentencing." In support of this form of relief, the State cites *Rodgers,* 678 F.3d at 1164 (citation omitted): "Regarding the right to counsel, we previously held that a habeas remedy should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred."

At oral argument, however, the State agreed that its position was that a motion for a new trial was a critical stage in the prosecution. *See http://www.courts.state.hi.us/courts/oral_arguments/archive/oasc30559.html.*

## B. The Right to Counsel for Post–Verdict Proceedings

■ We sua sponte raise the issue of the right to counsel for post-verdict motions, as Pitts did not raise the issue in his certiorari application. We do so, however, because the "right to counsel is an essential component of a fair trial[.]" *State v. Dickson,* 4 Haw.App. 614, 618, 673 P.2d 1036, 1041 (1983). "The Sixth and Fourteenth Amendments to the United States Constitution guarantee to a person accused by the state of committing an offense the right to be represented by counsel at every critical stage of the prosecution." *Reponte v. State,* 57 Haw. 354, 361, 556 P.2d 577, 582 (1976) (citing *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973)). Article I, Section 14 of the Hawai'i Constitution also guarantees the accused the right to counsel. *See id.* ("In all criminal prosecutions, the accused shall enjoy the right to ... have the assistance of counsel for the accused's defense.") A "critical stage" of the prosecution is any stage where "potential substantial prejudice to defendant's rights inheres." *State v. Masaniai,* 63 Haw. 354, 359, 628

---

**4.** The United States Supreme Court reversed the Ninth Circuit on the "clearly established federal law" holding only. *See Marshall v. Rodgers,* —— U.S. ——, 133 S.Ct. 1446, 1451, 185 L.Ed.2d 540 (2013)(per curiam)(holding that the Ninth Circuit may not canvas other circuits' precedent to presume that a particular rule of law would be clearly established Federal law if it were to be presented to the Supreme Court of the United States). For purposes of proceeding with its analysis, the United States Supreme Court "assumed, without so holding" that "after a defendant's valid waiver of his right to trial counsel under *Faretta* [*v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)], a post-trial, pre[-]appeal motion for a new trial is a critical stage of the prosecution." *Id.* at 1449.

P.2d 1018, 1022 (1981)(citing *United States v. Wade,* 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)).

■ In this appeal, two right to counsel principles have come to a head: the right to counsel versus the right to serve as one's own counsel. The United States Supreme Court has recently observed:

It is beyond dispute that "[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." It is just as well settled, however, that a defendant also has the right to "proceed *without* counsel when he voluntarily and intelligently elects to do so." There can be some tension in these two principles.

*Marshall,* 133 S.Ct. at 1449 (citations omitted). In this case, the circuit court erred in refusing to appoint substitute counsel for Pitts for post-verdict motions. In order to prevent similar future deprivations, we hold that the post-trial motion stage is a critical stage of the prosecution during which the right to counsel attaches, notwithstanding a defendant's earlier mid-trial waiver of the right to counsel.

■ In this appeal, the circuit court insisted upon enforcing Pitts' right to self-representation, even though it had become apparent at the post-verdict and sentencing stages of the prosecution that Pitts no longer desired to proceed pro se and had reasserted his right to counsel. A defendant's exercise of the right to self-representation, however, is not irreversible; the right is subject to termination. *See State v. Hutch,* 75 Haw. 307, 320, 861 P.2d 11, 21 (1993)(citing *Faretta,* 422 U.S. at 835 n. 46, 95 S.Ct. 2525 (observing that the right to self-representation is not offended when counsel is made "available to represent the [defendant] in the

event that <u>termination</u> of the defendant's self-representation is necessary.' ")(emphasis added)). In *McKaskle v. Wiggins,* 465 U.S. 168, 182, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the United States Supreme Court held that the right to self-representation terminates when a self-represented defendant either expressly approves of, or impliedly invites through acquiescence, counsel's participation in his defense.

■ In this case, Pitts expressly requested counsel for his post-verdict motions, again demonstrating his intention to terminate self-representation. *See McKaskle,* 465 U.S. at 182, 104 S.Ct. 944. Therefore, under *McKaskle* and *Hutch,* the circuit court would not have violated Pitts' right to self-representation had he appointed counsel for Pitts for post-verdict motions and sentencing. Hence, the circuit court erred in insisting that Pitts' earlier mid-trial waiver of counsel carried through postverdict.

■ The State argues that Pitts' requests for appointment of counsel post-verdict were "untimely" because they were raised on May 12, 2010, upon the hearing of those post-verdict motions. Pitts does not dispute that he requested post-verdict counsel on May 12, 2010. It is unlikely, however, that Pitts could have requested counsel any earlier than he did. At the April 7, 2010 hearing on Schum's motion, the circuit court had orally ruled that Schum "lacked standing" to act as Pitts' standby counsel and that Pitts was pro se after the verdict.[5]

The consequence of the circuit court's ruling that Schum's role as standby counsel ended at the close of trial was that Pitts then had to file his pro se post-verdict motions as soon as possible, because sentencing was set for May 12, 2010, a month away. At the May

---

5. On this score, Hawai'i Revised Statutes ("HRS") § 802–5 (1993), which governs indigent defendants, states, in relevant part, "When it shall appear to a judge that a person requesting the appointment of counsel satisfies the requirements of this chapter, the judge shall appoint counsel to represent the person <u>at all stages of the proceedings</u>, including appeal, if any." (Emphasis added). The circuit court, in appointing Schum (then assigning him as standby counsel), appointed him for "all stages of the proceedings" and did not exclude post-trial motions as part of

Schum's role. If that was the circuit court's intent, that should have been communicated to Pitts and Schum when Schum was assigned as standby counsel. *See, e.g., People v. Lindsey,* 17 Ill.App.3d 137, 308 N.E.2d 111, 117 (1974)("We are of the opinion that it was prejudicial to tell the defendant he could represent himself, with a court-designated lawyer to assist him, and then, at crucial phases of his trial, when he made reasonable requests for assistance, prevent the lawyer from assisting him.").

12, 2010 hearing, it became apparent to Pitts that the circuit court was about to deny his motions and that he was ill equipped to handle his own representation at that point. Therefore, Pitts requested post-verdict counsel then, which the circuit court refused because Pitts had waived counsel during trial.

The United States Court of Appeals for the Ninth Circuit has addressed a question similar to the one at bar: "[I]s a criminal defendant entitled to the assistance of an attorney at a post-trial hearing when prior to trial he waived the right to counsel and chose to represent himself?" *Menefield v. Borg,* 881 F.2d 696, 698 (9th Cir.1989). The Ninth Circuit answered the question in the affirmative, holding that the motion for a new trial is a "critical stage" in the prosecution, at which the right to counsel attaches. 881 F.2d at 699. The Ninth Circuit continued, "[A]lthough we recognize the right to counsel—once waived—is no longer absolute, we start with the strong presumption that a defendant's post-trial request for the assistance of an attorney should not be refused." 881 F.2d at 700.

The *Menefield* court also held that "at least in the absence of extraordinary circumstances, an accused who requests an attorney at the time of a motion for a new trial is entitled to have one appointed, unless the government can show that the request is made for a bad faith purpose." 881 F.2d at 701. The Ninth Circuit rejected as insufficient the government's argument that the defendant's "pretrial dismissal of two attorneys proves his bad faith." *Id.* It reasoned, "While repeated firings of counsel may in some circumstances evidence an improper motive, pretrial dismissals should ordinarily have little influence on the determination of whether a post-conviction motion for appointment of counsel is improper." *Id.* This was because "the unsettling experience of trial, as well as its unsatisfactory result, will be the source of a defendant's discontent with his own services and, consequently, the basis for his post-trial motion for the assistance of counsel." *Id.*

■ We agree that, in the absence of extraordinary circumstances, a defendant who has exercised the right to self-representation

at trial, but expressly requests counsel for post-verdict motions or for sentencing has a right to counsel. The State argues that Pitts' track record of firing four court-appointed attorneys pre-trial was a circumstance to be considered in denying the appointment of counsel for post-verdict motions (and sentencing). However, Pitts requested counsel post-verdict due to his "discontent with his own services" with regard to the post-verdict motions. Thus, under the circumstances of this case, Pitts' pre-trial track record of firing counsel is insufficient to establish that his post-verdict request for counsel was made in bad faith. There is also no other evidence of bad faith on Pitts' part in his request for counsel.

■ The United States Supreme Court has not considered whether a criminal defendant has a Sixth Amendment right to counsel for post-verdict motions. *See Marshall,* 133 S.Ct. at 1451. Nevertheless, "[w]e have long recognized ... that 'as the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution, we are free to give broader protection under the Hawai'i Constitution than that given by the federal constitution." *State v. Viglielmo,* 105 Hawai'i 197, 210–11, 95 P.3d 952, 965–66 (2004) (citations omitted). Therefore, we hold that, under Article I, Section 14 of the Hawai'i Constitution, a defendant who expressly requests counsel for post-verdict motions has a right to counsel, notwithstanding a prior waiver of counsel during trial.

## C. The Right to Counsel for Sentencing

■ The circuit court also erred in failing to appoint substitute counsel for sentencing. The circuit court granted Pitts' motion for appointment of counsel for his appeal, but denied Pitts' motion for appointment of counsel for sentencing, reasoning as follows: "[T]here's only one sentence that I can give you, legally.... I don't think an attorney would do you much good at this sentencing anyway because I don't have any discretion whatsoever."

544

It is well settled that the sentencing phase is a critical stage of the prosecution, during which the right to counsel attaches. *State v. Valera*, 74 Haw. 424, 435, 848 P.2d 376, 381 (1993). The ICA quoted the rationale for this in *D'Ambrosio* as follows: "[C]ounsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner." 112 Hawai'i at 463, 146 P.3d at 623 (citing *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). The sentencing hearing presented an important opportunity for the defendant to be heard and to correct any misinformation or misreading of court records:

> **Opportunity to be heard with respect to sentence; notice of pre-sentence report; opportunity to controvert or supplement; transmission of report to department.** (1) Before imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition.
>
> (2) The court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis or psychological, psychiatric, or other medical examination and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them. The court shall amend or order the amendment of the report upon finding that any correction, modification, or addition is needed and, where appropriate, shall require the prompt preparation of an amended report in which material required to be deleted is completely removed or other amendments, including additions, are made. . . .

HRS § 706–604 (1993 & Supp.2006). Substitute counsel could have provided valuable assistance to Pitts in "controvert[ing] or supplement[ing]" a presentence diagnosis report.

Further, even if there were no other sentence available to Pitts but a life term of imprisonment with the possibility of parole, Pitts would have benefited by having substitute counsel guiding him through the exercise (or non-exercise) of his right to allocution, preserving his arguments for appeal, and preparing for the proceedings before the Hawai'i Paroling Authority. To the extent that Pitts' ability to defend his interests on a level playing field was substantially affected by the denial of substitute counsel for sentencing, the circuit court's decision to force Pitts to proceed pro se during sentencing was error. Pitts' right to counsel, as enshrined in Article I, Section 14 of the Hawai'i Constitution, was violated when the circuit court denied his motion for appointment of counsel for sentencing.

## IV. Conclusion

We hold that the circuit court erred by not appointing substitute counsel for Pitts' postverdict motions because postverdict proceedings are critical stages in the prosecution. The circuit court also erred by not appointing substitute counsel for Pitts' sentencing. We therefore vacate the ICA's judgment on appeal and remand this case for further proceedings. Specifically, this case is remanded to allow for the appointment of substitute counsel for the purposes of filing a motion for new trial [6] and for resentencing.

---

6. The remand we order in this case remedies the constitutional violation. As we observed in note 3, *infra*, ordinarily the deadline for a motion for new trial cannot be extended under HRPP Rule 45(b). The remand we order seeks only to place Pitts in the position he would have been in had the constitutional violation never occurred. Cf.

*Rodgers*, 678 F.3d at 1164 ("Regarding the right to counsel, we previously held that a habeas remedy should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred.") (citation omitted).